The Mayor, Aldermen and Commonalty of the City of New York, Respondent, *v.* George Law et al., as Executors, etc., et al., Appellants.

While, as a general rule, there must be a dominant estate to which an easement appertains and a servient estate upon which it is imposed, there may be easements in gross, which are not appurtenant to any land, and which the owner may enjoy, although he does not own or possess a dominant estate or any land whatever.

In an action of ejectment brought by the city of New York, defendant claimed under a grant from the city to one H., the owner of the adjacent upland, of certain land "under water to be made and gained out of the East River," bounded "easterly by the westerly side" of a new street to be made along the river front, named Tompkins street, excepting, however, so much of the premises described "as is required for the streets" thereinafter mentioned. The grant bound H., within three months after notice from the city, but not until so requested, to build and make the streets or wharves through the premises laid down upon a map annexed to the grant. Among these streets were several running east and west to Tompkins street, being continuations of streets passing through the adjacent upland, of which streets the city owned the fee. The southerly one of these was Tenth street, of which the northerly half was included in the grant. The grantee was bound to keep the streets and wharves to be built in good repair and provided that they should "forever thereafter continue and remain public streets." In case of default on the part of the grantee, "his heirs or assigns," in building the streets and wharves as required, it was declared to be lawful for the grantor to grant the right of making the same, and of receiving the profits thereof, to any other person, "in fee or otherwise," or to make the same itself "and retain the use thereof for public purposes." The city covenanted that upon performance of all the covenants by the grantee, he, "his heirs and assigns," should forever thereafter have the right to receive and retain all wharfage, etc., "accruing by or from that part of the said street or wharf, called Tompkins street, fronting on the East river, which is opposite the said premises hereby granted." It appeared that the city owned the fee of nearly all of its streets, and that it is its settled

policy to take title in fee of land required for streets. *Held*, that the city had the fee of the land in the streets to be constructed pursuant to the grant; that defendants had no right to fill up or occupy any of them for any purpose without the permission of the city; but that the city could acquiesce in the filling up and construction of any one of these streets; and that its acquiescence and recognition of the street would be equivalent to a request to build.

Also *held*, that the grantee became the absolute owner of the land between the streets, and could fill it in when he chose, but was not obligated to do so; that he was bound, when requested, to construct Tompkins street as a continuous street along the whole "easterly side" of the entire block of land within the boundaries of the grant; the grantee to have the whole wharfage on so much of said street as he was thus bound to construct; that such wharfage, although in form secured to him by a covenant, was in effect granted to him, and so was not a mere easement appurtenant to the land granted; but *held*, that this was the whole wharfage granted; and that the grantee was not entitled to wharfage at any of the intersecting streets before the construction of Tompkins street, or to any wharfage until that street was constructed.

Certain persons and corporations who succeeded to the title and rights of the grantee, more than twenty years before the commencement of this action, filled in the northerly half of Tenth street to Tompkins street and used it as a pier, taking wharfage. A ferry-house and other buildings were erected thereon, and it was so being used by defendants at the commencement of the action which was brought to recover the portion of the street so occupied. *Held*, that defendants had acquired no right to maintain their pier and buildings, and to take wharfage, either by adverse possession, prescription or estoppel; and that ejectment was the proper remedy, as the judgment giving the city possession did not discharge it from its duty to keep and maintain the street, but simply put an end to the private occupation thereof by defendants.

(Argued January 13, 1891; decided January 27, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made February 13, 1889, which affirmed a judgment in favor of plaintiff entered upon the report of a referee.

This was an action of ejectment brought by the mayor, etc., of New York against executors and trustees under the last will and testament of George Law, deceased, George Law, Jr., and the Greenpoint Ferry Company, to recover possession of the northerly half of Tenth street in the city of New York,

lying between the westerly end of the ferry-house of the Greenpoint ferry and the exterior or bulk-head line in the East river, together with the pier or part of a pier and other structures erected, and the wharfage and other emoluments thereof. Defendants claim under a grant from plaintiff executed and delivered February 28, 1825, to Charles Henry Hall, the material portions of which are set forth in the opinion.

On May 18, 1825, said Hall conveyed all the rights and title entered under the grant to the New York Dry Dock Company and thereafter said company, with the grantee of land adjoining on the south, filled up such portions of the land under water at its own expense, but not at plaintiff's request, as were included within the lines of the projected extensions of streets as laid down on said map, and also constructed two piers at the ends of said streets respectively, and between said piers said company built two marine railways. They also ran fences across the piers. On January 6, 1842, said company leased said premises to William H. Brown and John English, shipbuilders, who occupied and used them for the purpose of dry docking and repairing vessels, and collected wharfage until the expiration of their lease, May 14, 1846. On July 21, 1846, said company entered into an agreement for the filling in and widening of the Tenth street pier and its extension to the east side of Tompkins street  This work was finished prior to 1859. After said agreement and until 1854, said company used the north half of said pier as before, in connection with its business. In that year it leased to Shepard Knapp certain premises north of the northerly line of Tenth street and bounded easterly by the easterly line of Tompkins street and the northerly half of the Tenth street pier. Knapp thereupon constructed ferry racks resting against said pier, a ferryhouse and other buildings on the pier and gate-ways, shutting off access to the ferry slip. On June 4, 1870, the New York Dry Dock Company conveyed to George Law, Jr., certain premises which included the northerly half of said Tenth street pier. On October 10, 1870, said George Law, Jr., conveyed to George Law the same premises, and on May 1, 1876,

said George Law leased to the Greenpoint Ferry Company until November, 1880, the premises previously leased to Knapp. This lease was subsequently extended to June 1, 1886. Said company was at the commencement of the action using the northerly half of the pier for the purposes of its ferry.

The referee before whom this action was tried, reported that plaintiffs were entitled to recover from defendants, possession of the premises described in the complaint, and judgment was entered accordingly.

*John F. Dillon* and *E. Randolph Robinson* for appellants. Under the true construction of the water grant by the plaintiffs to Hall, dated February 28, 1825, the defendants, Law's representatives, are entitled to riparian emoluments of the *locus in quo,* and to its possession to the extent required for their enjoyment. The grant gave the grantee riparian emoluments in the entire premises described in the grant. Such riparian emoluments are not taken away by the exception in the grant, but, on the contrary, are confirmed and secured by the subsequent covenants which define the purpose and scope of the exception. (Laws of 1798, chaps. 80, 129 ; R. L. of 1813, chap. 86, § 220 ; Laws of 1806, chap. 126 ; Laws of 1807, chap. 115 ; *Bedlow* v. *N. Y. F. D. D. Co.,* 112 N. Y. 277 ; *Kingsland* v. *Mayor, etc.,* 110 id. 575 ; *Guion's Case,* 11 id. 461; *Langdon's Case,* 93 id. 143 ; *Mayor, etc.,* v. *Hall,* 95 id. 457 ; *Commonwealth* v. *Roxbury,* 9 Gray, 496 ; *Williams* v. *Mayor, etc.,* 105 N. Y. 433 ; *Verplanck* v. *Mayor, etc.,* 2 Edw. Ch. 220 ; *Barney* v. *Keokuk,* 94 U. S. 324, 340 ; *Duryea* v. *Mayor, etc.,* 62 N. Y. 597 ; *Story* v. *R. R. Co.,* 90 id. 164; *United States* v. *Babbitt,* 1 Black, 61 ; *Boreel's Case,* 2 Sandf. 556.) A contemporaneous, uniform and long-continued practical construction of a grant of this kind is of the greatest legal significance and force in determining its true meaning and purpose. Where it has been continuous and unbroken for nearly two generations, it is and ought to be conclusive. (3 Washb. on Real Prop. 384; *Connery* v. *Brooks,* 73 Penn. St. 84 ; Broome's Maxims, 532 ;

*Sheldon* v. *City of Chicago,* 9 Wall. 50; *United States* v. *B. & M. R. R. Co.,* 98 U. S. 341; *Price* v. *Evans,* 26 Mo. 30; *Woolsey* v. *Funke,* 121 N. Y. 92; *Duryea* v. *Mayor, etc.,* 96 id. 477, 495; 2 Dillon on Mun. Corp. [4th ed.] § 629; *City of St. Louis* v. *Meier,* 77 Mo. 13; *City of Baltimore* v. *White,* 2 Gill [Md.], 444; *N. F., etc., Co.* v. *Bachman,* 66 N. Y. 261; *Marant* v. *Chamberlain,* 6 H. & N. 541; *Langdon's Case,* 93 N. Y. 129; *Guion's Case,* 11 id. 461; *Kingsland* v. *Mayor, etc.,* 110 id. 569; *Hoboken* v. *R. R. Co.,* 124 U. S. 681.) Defendant has the right and title to the wharfage and the like emoluments of the pier in question by prescriptive user and adverse enjoyment. (*Thompson* v. *Mayor, etc.,* 3 Sandf. 500; 3 Washb. on Real Prop. [4th ed.] 51, 52, 53; 2 id. 318–330, 367; *Parker* v. *Foote,* 19 Wend. 309; *Nichols* v. *Boston,* 98 Mass. 39; *Burbank* v. *Fay,* 65 N. Y. 57.) Judgment absolute was erroneous, as it does not respect the public easement or the rights of the city's grantees as abutting owners in such public easement. (*Wager* v. *T. U. R. R. Co.,* 25 N. Y. 526; *Ref. Ch.* v. *Schoolcraft,* 65 id. 151; *Rogers* v. *Sinsheimer,* 50 id. 646, 649; Dillon on Mun. Corp. [4th ed.] 663.) The wharf right of the defendants, Law's representatives, under the grant, and the right of the defendant, the Greenpoint Ferry Company, under its lease from the city of the ferry franchise, cannot be set aside. (*Rogers* v. *Sinsheimer,* 50 N. Y. 646, 649; *Child* v. *Chappell,* 9 id. 246; *Mayor, etc.,* v. *Ferry Co.,* 55 How. Pr. 154; 9 Hun, 620; *Wilklow* v. *Lane,* 37 Barb. 247; Code Civ. Pro. § 1519.) The defendants' possession was by the consent of the city, and hence the judgment entered. was erroneous, even if the right to wharfage, etc., as well as the fee of the *locus in quo* are in the city. (Laws of 1858, chap. 261; *Kingsland* v. *Mayor, etc.,* 110 N. Y. 569.)

*D. J. Dean* and *James Hilhouse* for respondents. The plaintiffs, beyond any reasonable doubt, comply with the elementary rule that in an action of ejectment plaintiff must recover upon the strength of his own title, not upon any weakness in that of his adversaries. The plaintiffs have shown a

title in themselves by grant from the People of the state of
New York to all the premises involved in this action. (*Towle*
v. *Remsen*, 70 N. Y. 316 ; *Langdon* v. *Mayor, etc.*, 93 id.
129 ; *Mayor, etc.*, v. *Hart*, 95 id. 443, 450 ; *Bedlow* v. *N. Y.
F. D. D. Co.*, 112 id. 263 ; Laws of 1826, chap. 166 ; *Nott* v.
*Thayer*, 2 Bosw. 10 ; *Smith* v. *Mayor, etc.*, 68 N. Y. 552, 557 ;
Laws of 1871, chap. 574, § 6 ; *Leprell* v. *Kleinschmidt*, 112
N. Y. 364, 369 ; *Brown* v. *Galley*, H. & D. 308 ; *Uline* v.
*N. Y. C. & H. R. R. R. Co.*, 101 N. Y. 123 ; *Westlake* v.
*Koch*, 8 N. Y. Supp. 665 ; *Wager* v. *R. Co.*, 25 N. Y. 526 ;
*Ref. Ch.* v. *Schoolcraft*, 65 id. 150, 151 ; *Strong* v. *City of
Brooklyn*, 68 id. 11 ; *Mayor, etc.*, v. *Carleton*, 113 id. 284 ; 2
Dillon on Mun. Corp. § 662 ; *Childs* v. *Chappell*, 9 N. Y. 246,
252 ; *Clement* v. *Burtis*, 121 id. 708 ; *Newman* v. *Nellis*, 97
id. 285, 292 ; *People* v. *Mauran*, 5 Den. 389 ; *C. & S. L. R.
R. Co.* v. *Valentine*, 19 Barb. 484 ; *Beals* v. *Stewart*, 6 Lans.
408 ; Code Civ. Pro. §§ 1502, 1503 ; *Bradt* v. *Church*, 110
N. Y. 537.) Under the water grant by the city of New York
to Charles Henry Hall, dated February 28, 1825, the fee of
the spaces indicated as streets on the map attached to the
grant has remained in the city of New York, because expressly
excepted from the premises granted. (*Munn* v. *Worrall*, 53
N. Y. 44 ; *Langdon* v. *Mayor, etc.*, 6 Abb. [N. C.] 314, 322 ;
93 N. Y. 149 ; *Coffin* v. *Scott*, 19 Wkly. Dig. 413 ; 102 N. Y.
730 ; *Duryea* v. *Mayor, etc.*, 62 id. 592 ; 96 id. 477 ; *Borst*
v. *Empie*, 5 id. 33 ; *Williams* v. *Mayor, etc.*, 105 id. 419, 428,
429 ; *Thompson* v. *Gregory*, 4 Johns. 81 ; *Provost* v. *Calder*,
2 Wend. 517 ; *Dygert* v. *Matthews*, 11 id. 36 ; *A. Ins. Co.* v.
*Lansing*, 7 Johns. Ch. 142 ; *Jackson* v. *Vermilyea*, 6 Cow. 677.)
The defendants acquired no right to the wharfage or emolu-
ments or exclusive use of the pier at the foot of East Tenth street
by reason of the covenant in relation to wharfage or any other
covenant or clause contained in the grant to Hall ; that grant
gives the grantee the right to wharfage on the whole interven-
ing space between the middle line of Tenth street extended to
the East river and the middle line of Thirteenth street, as thus
extended. (*Johnson* v. *S. I. G. & C. M. Assn.*, 25 N. E. Rep.

484; 47 Hun, 374; *Brookman* v. *Kurzman,* 94 N. Y. 276; *Story* v. *N. Y. E. R. R. Co.,* 90 id. 165; *In re Mayor, etc.,* 2 Wend. 472; *Lawrence* v. *Palmer,* 71 N. Y. 607; *Ousby* v. *Jones,* 73 id. 621; *Masten* v. *Olcott,* 101 id. 158; *Milliken* v. *W. U. T. Co.,* 110 id. 412; *Coleman* v. *Eyre,* 45 id. 38, 41; *Briggs* v. *Tillotson,* 8 Johns. 308; 1 Waite's Act. & Def. 102; *Pope* v. *T. H. C. & M. Co.,* 107 N. Y. 65; *Wells* v. *N. Y. C. R. R. Co.,* 24 id. 183; *Baldwin* v. *Humphrey,* 44 id. 609; *Jugla* v. *Trouttet,* 120 id. 27; *Comrs. of Pilots* v. *Clark,* 33 id. 251; *Taylor* v. *Beebe,* 3 Robt. 262, 268; *Bd. of Comrs. of Pilots* v. *E. R. Co.,* 5 id. 366, 381, 382; *Mayor, etc.,* v. *N. S., etc., F. Co.,* 55 How. Pr. 154; 9 Hun, 620; *Kingsland* v. *Mayor, etc.,* 110 N. Y. 569, 575, 581; 2 R. L. of 1813, 431–436, §§ 219–236.) The defendants have neither title to the *locus in quo* by adverse possession, nor the right and title to the wharfage and emoluments by prescriptive user and adverse enjoyment. (*Stevens* v. *Rhinelander,* 5 Robt. 285, 311; *McFarlane* v. *Kerr,* 10 Bosw. 249; *S. V. O. Asylum* v. *City of Troy,* 76 N. Y. 108, 114; *Driggs* v. *Phillips,* 103 id. 77; *Bliss* v. *Johnson,* 94 id. 235, 241; *Bridges* v. *Wyckoff,* 67 id. 130; Elliott on Roads & Streets, 667, 668, 669; Sedgwick & Waite on Title, § 753; 2 Dillon on Mun. Corp. §§ 669, 675; *Childs* v. *Nelson,* 69 Wis. 125; *Walker* v. *Caywood,* 31 N. Y. 51; *M. E. Co.* v. *Newton,* 21 N. Y. S. R. 73; 51 Hun, 639; *In re Comrs. of Public Parks,* 53 id. 556; *Hymes* v. *Estey,* 116 N. Y. 507; *Darker* v. *Beck,* 32 N. Y. S. R. 193; 56 Hun, 650; *In re Mayor, etc.,* 2 Wend. 372; *In re N. Y. C. & H. R. R. R. Co.,* 77 N. Y. 248, 254, 260; *In re Dep. of Parks,* 73 id. 560, 565; *Giffen* v. *City of Olathe,* 24 Pac. Rep. 470; *Vanderbeck* v. *City of Rochester,* 46 Hun, 87; *In re Lexington Ave.,* 29 id. 305; 92 N. Y. 629; Laws of 1881, § 469; N. Y. Const. art. 3, § 18; *In re Woolsey,* 95 N. Y. 141; *Howard* v. *Howard,* 17 Barb. 663; *Bedell* v. *Shaw,* 59 N. Y. 46; *Burbank* v. *Fay,* 65 id. 57; *Rosseel* v. *Wickham,* 36 Barb. 386; *Tyler* v. *Heidorn,* 46 id. 439, 464, 465; *M. E. Church* v. *Brownell,* 5 Hun, 464, 466, 467; Code Civ. Pro. §§ 369, 371; *Doherty* v. *Matsell,* 119 N. Y.

646; *Burbank* v. *Fay*, 65 id. 57, 66, 67; *Donahue* v. *State*, 112 id. 142, 145; *K. Ice Co.* v. *Shultz*, 116 id. 382, 388.) The plaintiffs are not estopped from claiming that they are the owners of the premises described in the complaint, or from insisting that. they were at the time of the commencement of this action entitled to the possession thereof, either because the north half of the pier on the premises has been assessed for taxation in the names of the defendants or in the names of some of their predecessors in occupancy, or because the defendants and their predecessors in occupancy have paid such taxes, or because they have made various expenditures for building, rebuilding and repairing the pier, or because of the Ewen map and resolution of 1849. (2 R. L. of 1813, 432, 433, §§ 220, 221, 222, 224; *People* v. *B. & O. R. R. Co.*, 117 N. Y. 150, 156; *People ex rel.* v. *Cassity*, 46 id. 46; *Smith* v. *Mayor, etc.*, 68 id. 552; *People ex rel.* v. *Comrs. of Taxes, etc.*, 82 id. 459; *People ex rel.* v. *Bd. of Assessors*, 93 id. 308, 311; *Baker* v. *U. M. L. I. Co.*, 43 id. 283; *Boardman* v. *L. S. & M. S. R. Co.*, 84 id. 157, 182, 183; *N. Y. & O. M. R. R. Co.* v. *Van Horn*, 57 id. 473; *Shapley* v. *Abbott*, 42 id. 443, 447; Bigelow on Estoppel [5th ed.], 626, 627; *Rossire* v. *City of Boston*, 4 Allen, 57; *Ellsworth* v. *Grand Rapids*, 27 Mich. 250; *County of Buena Vista* v. *I. F., etc., R. R. Co.*, 46 Ia. 226; *Bixby* v. *Adams County*, 49 id. 507; *Simplot* v. *City of Dubuque*, Id. 630; *Sally* v. *Poorbaugh*, 45 id. 453; *Gibson* v. *Howe*, 37 id. 160; *Lorillard* v. *Town of Monroe*, 1 Kern. 392; *City of St. Louis* v. *Gorman*, 29 Mo. 593; Cooley on Tax. [2d ed.] 821; *Tillotson* v. *Prichard*, 14 At. Rep. 302; *Miller* v. *L. I. R. Co*, 71 N. Y. 380; 2 Herman on Estoppel, § 957; *Brant* v. *V. C. & I. Co.*, 93 U. S. 326; *McCulloch* v. *Wellington*, 21 Hun, 5, 11, 12; *Calkins* v. *B. & R. N. G. L. Co.*, 1 T. & C. 541, 546, 547; *Christianson* v. *Linford*, 3 Robt. 215; *Miller* v. *Platt*, 5 Duer, 272, 284; *Jewett* v. *Miller*, 10 N. Y. 402, 407, 408; *Giraud* v. *Giraud*, 58 How. Pr. 175; *Nichols* v. *Nussbaum*, 10 Hun, 214; *Corning* v. *T. I. & N. Foundry*, 40 N. Y. 191, 203; *Babcock* v. *Utter*, 1 Abb. Ct. App. Dec. 27, 37; *Odlin* v. *Gove*, 41 N. H. 465,

474; *Wood* v. *Griffin*, 46 id. 230, 237; *Gove* v. *White*, 20 Wis. 425, 430; *Hill* v. *Epley*, 31 Penn. St. 331; *Gray* v. *Bartlett*, 20 Pick. 186; *Knouff* v. *Thompson*, 16 Penn. St. 357; *Patterson* v. *Esterling*, 27 Ga. 205; *Tongue* v. *Nutwell*, 17 Md. 212, 230; *Bigelow* v. *Topliff*, 25 Vt. 273, 287; *Hale* v. *Skinner*, 117 Mass. 474; Elliot on Roads & Streets, 669, 670; *Ryder* v. *C. F. I. Co.*, 52 Barb. 447; *Winegar* v. *Fowler*, 82 N. Y. 315; *Norton* v. *Kearney*, 10 Wis. 443; Code Civ. Pro. § 1531; *Woodhull* v. *Rosenthal*, 61 N. Y. 382, 393; *Wood* v. *Wood*, 83 id. 575; Laws of 1849, chap. 187, § 12; *Smith* v. *Mayor, etc.*, 4 Sandf. 221; 10 N. Y. 504; *Ellis* v. *Mayor, etc.*, 1 Daly, 102.

Earl, J. This is an action for ejectment to recover land situated in the city of New York, bounded as follows: "Northerly by the northerly line of Tenth street, extended easterly to the bulk-head line; southerly by the centre line of Tenth street, extending easterly to the bulk-head line; easterly by the said bulk-head line in the East river, and westerly by the westerly line of the Tenth street ferry-house and a line in continuation thereof southerly to the centre line of Tenth street, together with the pier, or part of a pier and other structures thereon erected and the wharfage and other emoluments thereof." The cause was referred and the referee gave judgment to the plaintiff.

The title of the defendants to the premises in question, whatever it is, originated in a grant of land under water, from the city to Charles Henry Hall, dated February 28, 1829, and the rights of the parties depend upon that grant and the proper construction thereof. The premises granted are described as follows: "All that certain water lot, vacant ground and soil under water to be made land and gained out of the East river situate, lying and being in the Ninth ward of the said city and bounded as follows, to wit: Westerly by high-water mark East river, northerly by the continuation of a line drawn through the middle of Thirteenth street, easterly by the westerly side of a certain new street hereinafter mentioned to be

made called Tompkins street, and southwardly by a certain
other water lot granted or to be granted by the said parties of
the first part to Nicholas William Stuyvesant, containing in
breadth on the easterly side 864 feet, and in length on the
southerly side 682 feet and five inches, be the same more or
less, as by a map or survey thereof made by D. Ewen, city
surveyor, dated March, 1825, a copy of which is hereunto
annexed, reference being thereunto had will more fully and at
large appear (excepting, however, so much of the said above-
described premises as is required for the streets hereinafter
mentioned to be made), together with all and singular the
privileges, advantages, hereditaments and appurtenances to
the same belonging or in anywise appertaining." Hall was
the owner of the adjacent upland. The grant bound him, his
heirs and assigns to pay an annual rental forever. It also
bound them within three months next after request by the
city, but not until so requested, at their own expense to build
and make the streets or wharves through the premises laid
down upon the map annexed to the grant. Among such
streets are Eleventh, Twelfth, the northerly half of Tenth
street, the southerly half of Thirteenth street, Tompkins street
along the easterly side of the premises, seventy feet wide, and
other streets; and it bound them to keep such streets or wharves
thus to be built forever in repair at their own expense, and pro-
vided that the same should forever thereafter continue to be and
remain public streets for the use of the public; and that in case
default should be made by the grantee, his heirs or assigns, " in
building, erecting, making and finishing the said wharves and
streets as aforesaid, or any part thereof when they shall be so
required as above mentioned, then in that case it shall and may
be lawful for the said parties of the first part and their suc-
cessors to grant the right of making the same and the right of
receiving the profits thereof to such person or persons in fee or
otherwise, and upon such terms as they the said parties of the
first part or their successors shall deem meet, or at the election
of the said parties of the first part, or their successors, to make
the same themselves and retain the use thereof for public pur-

poses." And the city covenanted that upon the payment of the annual rent and performance of all the covenants by the grantee, his heirs and assigns, he and they " shall and lawfully may from time to time and at all times forever hereafter fully have, enjoy, take and hold to his and their only proper use, all manner of wharfage, cranage, advantages and emoluments growing or accruing by or from that part of the said wharf or street called Tompkins street fronting on the East river which is opposite the said premises hereby granted."

Now under this grant, who had the fee of the land in the streets to be constructed through the premises? Clearly the city. That was excepted from the premises granted. As the city then owned in fee the land upon which all, or nearly all, its streets were constructed, and as it was the settled policy of the city to condemn or purchase land in fee for its streets, it cannot be supposed that it meant to depart from the usual course in this grant and actually convey away the fee of the land needed for streets, and to reserve to itself only street easements therein. The city owned the fee of the land in Tenth, Eleventh, Twelveth and Thirteenth streets where they passed through the adjacent upland, and it cannot be supposed that it intended to part with the fee of the land needed for the extension of the streets through the land to be reclaimed from the water, so that it would have the fee of the land in portions of the streets and only easements in the lands of other portions. This construction of the exception contained in this grant has the sanction of ample authority, and it is not needful to say more about it. (*Langdon* v. *Mayor, etc.,* 93 N. Y. 149; *Duryea* v. *Mayor, etc.,* 62 id. 592 ; *S. C.* 96 id. 477 ; *Coffin* v. *Scott,* 102 id. 730.)

The land, therefore, within the exterior lines of the projected streets belongs to the city, and the defendants had no right to fill it up or occupy it for any purpose without the permission of the city. They were not to make or build the streets or wharves until requested by the city to do so, and any unauthorized entry thereon would be a trespass. The city, could, however, acquiesce in the filling up and construc-

tion of one of these streets under such circumstances, and for such a length of time that such acquiesence and its recognition of the street would be equivalent to a request to build the street under the grant.

The grantee became the absolute owner of the land between the streets — the land granted, and that he could fill up whenever he chose, suiting his own pleasure as to the time and manner of doing it, but there was nothing in the grant binding him to fill it up. (*Duryea* v. *Mayor, supra.*)

Tompkins street is on the easterly side of the land granted, and it is not claimed that any part of the land in that street was granted. When filled up and constructed as a wharf it will lie between the East river and the land granted. It will not be intersected by Tenth, Eleventh, Twelfth and Thirteenth streets, and thus cut up into sections. It is a continuous street along the easterly side of the granted premises, extending beyond them, and it is that street and the whole of it, which the grantee was bound, when required by the city, to build and forever maintain along " the easterly side," and the whole of the easterly side of the " granted premises." It is quite unreasonable to suppose that the parties to the grant meant by the words " granted premises," only the several blocks of land between the streets. They evidently had in view the entire block of land bounded and described as the granted premises, although the streets through the same were excepted. The land from the middle of Tenth street to the middle of Thirteenth street was contemplated and bounded as a whole tract.

The grantee was to have the wharfage of the whole of the wharf which he was thus bound to build and maintain. Although the wharfage was in form secured to him by a covenant, it was, as we held in *Langdon* v. *Mayor, etc.*, in effect granted to him. It was the wharfage growing or accruing by or from that part of the Tompkins street wharf fronting on the East river and "opposite" to the premises granted. The word " opposite " was used so as to exclude from the operation of the grant the right to wharfage northerly or southerly of the premises bounded and described, and so as to confine the

wharfage to that portion of the wharf which the grantee was bound to construct and maintain. This right of wharfage was granted to the grantee, "his heirs and assigns," and it was not a mere easement appurtenant to the land conveyed to the grantee. It is quite true that easements must generally be appurtenant to some land or estate, and that there must be a dominant estate to which the easement appertains and a servient estate upon which it is imposed. But that is not true of all easements. There may be easements in gross which are not appurtenant to any land, and which the owner may enjoy, although he does not own or possess a dominant estate or any land whatever. Here the intention was to create an interest in this wharf by this grant which the grantee could enjoy himself or convey to any other person. (*Goodrich* v. *Burbank*, 12 Allen, 459; Washburn on Easements, 10, 11, 36, 217.)

It is very clear that by this grant the only wharfage granted was the wharfage upon the wharf called Tompkins street. There is no covenant that the grantee should have any other wharfage, and the express mention of the wharfage at this wharf would, by fair implication, exclude wharfage at any other place. Our attention is called by the learned counsel for the defendants, with considerable emphasis, to that portion of the grant which provides that in case default shall be made by the grantee in building any of the wharves and streets which by the grant he was bound to build when required by the city, that then and in that case it should be lawful for the city to grant the right to build the same, and the right of "receiving the profits thereof" to other persons, in fee or otherwise, as the city might determine. The argument in substance is that the word "profits" there used means the profits from any or all the streets passing through the granted premises, as well as those from Tompkins street, and that the necessary implication is that, but for the default, the grantee would be entitled to such profits. There is just enough to form some basis for such an argument, and yet we do not think the argument well founded. The express grant of the wharfage on Tompkins street would seem, by implication, to

exclude a grant of wharfage anywhere else, and the word "profits" as used there can be satisfied by referring it to the profits of Tompkins street alone, and that those profits were in mind at the time the word was used in that connection. But whatever meaning should be given to the word profits as there used, it is, nevertheless, true that the city could grant the profits, so far as any could be made, upon any of these streets to any other person in case the plaintiff did not build the streets when required; and any implication which can be derived from the use of the word profits in that portion of the grant is fully overcome by the implication to be drawn from the express grant or wharfage at Tompkins street wharf alone. Indeed it is difficult to see how wharfage at any other place could have been contemplated, for after the construction of the Tompkins street wharf there would be no access by vessels to any portion of the granted premises, and no place where wharfage could be taken except at that wharf. It is not probable that the parties had in mind a period of time before the construction of Tompkins street during which wharfage could be taken further inland at some other point. It is not a just inference that the grantee was to have wharfage at the intersecting streets, which he was bound to construct and maintain, as a compensation for his labor and expenditures. There was ample consideration for all the covenants binding him, in that he was to have all the wharfage in front of the granted premises, and was to have all the land reclaimed from the water between the streets.

We have, therefore, come to the conclusion that the grantee did not become entitled to wharfage, at or upon any of the streets passing through these premises; that, by virtue of his grant, he had no right to build or maintain a pier in Tenth street and there take wharfage, and that the defendants, as the successors of the grantee, can never become entitled to any wharfage until, upon the request of the city, they have constructed Tompkins street. When they have constructed that, or any portion of it, upon the request of the city, then, and not until then, can they commence to take wharfage.

Therefore, if the defendants are bound to stand upon the grant alone, they had no right to occupy any portion of Tenth street, and to maintain thereon their buildings and structures connected with their ferry, and they had no right to take any wharfage there, and this judgment is clearly correct.

But they claim that they have acquired the right to maintain their pier and buildings and to take wharfage from this street by adverse possession, by prescription and by estoppel. We have considered the learned and able arguments submitted to us upon these claims on behalf of the defendants, and we are satisfied that they are unsound, and, as to them, we will leave the case to stand upon the able opinion of the referee before whom the case was tried.

It is said that ejectment is not the proper form of remedy in this case, and that the judgment is too broad. The defendants have entered upon the land of the city, have put structures thereon, are using the same mainly for their private purposes, and have erected a wharf and pier and are taking wharfage thereon. Thus they are so in possession that, under all the authorities, the city can maintain this action, and the judgment is not too broad. ( *Wager* v. *Troy Union Railroad Co.*, 25 N. Y. 526; *Reformed Church* v. *Schoolcraft*, 65 id. 134, 151; *Strong* v. *City of Brooklyn*, 68 id. 1; *Uline* v. *N. Y. C. & Hud. Riv. R. R. Co.*, 101 id. 98, 123; 2 Dillon on Municipal Corporations [3d ed.], § 662.)

If Tenth street has become a street of the city and is so filled up and constructed that it can be used as a street, the city, having recovered it, is bound still to appropriate the land recovered to street purposes. This recovery from these defendants does not absolve the city from the discharge of its public duty to keep and maintain the street, and it does not destroy the street. It simply puts an end to the private occupation and use thereof for any purpose of these defendants.

Our conclusion, therefore, is that the judgment should be affirmed, with costs.

All concur, RUGER, Ch. J., in result.

Judgment affirmed.