CHARLES HUESTON HASTINGS et al., Plaintiffs, *v.* THE CITY OF NEW YORK, Defendant.

(Supreme Court, New York Special Term, February, 1903.)

**New York city — Municipal grant of lands under water on the Harlem river.**

In 1865 the city of New York granted to the plaintiffs' mesne grantors, as owners of the adjacent upland, lands under water on the Harlem river extending from high water mark to the bulkhead line as established in 1859, and the grant made that line the easterly boundary of the premises. Along that line the city had before 1859 laid out an exterior street but never has constructed it. The grant reserved to the city streets and avenues existing, or shown on an annexed map, but required the grantees to construct them, as well as wharves and bulkheads, on three months' notice. The city granted to the grantees all wharfage etc. from " that part of the exterior line of the said city lying on the easterly side of the hereby granted premises fronting on the Harlem river ". In 1873 Seventh avenue, an avenue within the boundaries of the grant, was made at the expense of the abutting owners and was lawfully carried out to the bulkhead line. The city licensed certain structures, floating or on piles, to be placed within the boundaries of the grant along and outside of the

bulkhead line; and in 1897 of its own motion built at the foot of Seventh avenue along the bulkhead line a permanent bulkhead platform and began and has since continued to collect wharfage etc. therefrom.

Held, that the plaintiffs were entitled to the removal of any of the said structures, floating or on piles, located on lands lying between the streets and avenues and to have the city enjoined from granting any similar licenses hereafter, but that, so long as the exterior street remained unconstructed, they were not entitled to the removal of any structures (excluding from consideration the bulkhead platform at the foot of Seventh avenue) which laid wholly within the lines of the projected streets.

That the words of the grant gave the plaintiffs the right to wharfage etc. from the exterior street when constructed, and that, as the city had elected to construct the bulkhead platform, at the foot of Seventh avenue, without requiring or permitting the plaintiffs to do so, the city must account to them for the wharfage collected there by it or pay them the permanent value of their rights, if the city should elect to retain the bulkhead platform for its own use.

ACTION for equitable relief and for an accounting.

Carter & Ledyard (Joseph W. Welsh and Edmund L. Baylies, of counsel), for plaintiffs.

George L. Rives, Corporation Counsel (E. J. Freedman, of counsel), for defendant.

SCOTT, J. On November 8, 1865 the mayor, aldermen and commonalty of the city of New York, being the owner of the land under water on the Harlem river between One Hundred and Fifty-first street and One Hundred and Fifty-fifth street, and extending from the then high-water mark to the bulkhead line, or line of solid filling established by the Legislature, granted said land under water to Lucy S. Develin and others, the owners in fee of the adjacent upland. The plaintiffs are the successors in title to these grantees. Prior to the making of this grant the Legislature, by chapter 285, Laws of 1852, had authorized the mayor, aldermen and commonalty of the city of New York to lay out and fix a permanent exterior street along the entire water front of the Harlem river. In 1858 the board of

aldermen and common council directed the street commissioner
to fix and lay out such an exterior street, seventy feet wide,
along the shore of the Harlem river.   In pursuance of the fore-
going act and resolutions, and in the year 1859 maps were pre-
pared and duly confirmed laying out and permanently fixing the
exterior street, seventy feet in width along the harbor commis-
sioners' exterior line, or bulkhead line of solid filling which had
been established by the Legislature in 1859.   This line was men-
tioned and referred to in the grant to plaintiffs' predecessors,
and was designated on the map attached thereto as the easterly
boundary of the premises therein described.   The Act of 1852
also provided that the several streets and avenues as laid out in
the map of the city according to law should be continued and
extended along the present lines thereof from their present ter-
mination on the map to the said exterior street and permanent
line.   The land under water granted to plaintiffs' predecessors
is described in the grant, in bulk, by a description which includes
all the land under water in front of the grantees' upland, and
extending between high-water mark and the bulkhead line or line
of solid filling above referred to " saving and reserving out of
the hereby granted premises so much thereof as may form part
of any street or streets, avenue or avenues, that may now or
hereafter be designated or laid out through said premises accord-
ing to law for the uses of public streets, avenues or highways as
hereinafter mentioned."   Attached to the grant was a map or
plan showing the property granted and the streets and avenues
projected to be laid out when the land under water should be
reclaimed and filled in.   The grant was made in consideration
of a specified sum of money, and of certain covenants on the part
of the grantees to the effect that they would build, make and
erect, within three months after being required by the city to
do so, good and sufficient bulkheads, wharves, streets and avenues
that may be designated or laid out through the premises described,
and fill in, regulate and pave the same and lay out sidewalks
thereof, and further that they would not build said wharves,
bulkheads, streets or avenues or make the lands until permission
shall be first had and obtained from the city.   The city, upon
its part, covenanted that the grantees and their successors in
interest, upon observing, fulfilling and keeping all and singular
the articles, covenants and agreements on their part " shall and

may from time to time, and at all times hereafter, fully have and enjoy, take and receive and hold to their own proper use all manner of wharfage, cranage, advantages and emoluments growing or accruing by or from that part of the exterior line of the said city lying on the easterly side of the hereby granted premises fronting on the Harlem river, with full power to collect and receive the same for their own proper use and benefit forever." The plaintiffs or their predecessors in interest, without express permission from the city but without objection on the part of the city, have filled in within the limits of the grant, below the high-water mark designated therein, certain portions of the streets intersecting the granted lands, but such filling does not include any part of the exterior street, nor have the plaintiffs or their predecessors in title ever built or erected or caused to be built or erected any wharf or pier or other obstruction in the Harlem river in front of the premises described in the grant.   Among the streets shown on the map attached to the grant as intersecting the granted premises, is Seventh avenue, which terminates at the Harlem river. This avenue was regulated, graded, curbed and flagged by the city, at the locality in question, in 1873, and the cost thereof was assessed upon the adjoining property and paid by the owners thereof.   In 1877, and again in 1887, the city permitted pile platforms to be erected at the foot of Seventh avenue. In 1897 the city at its own expense, through the department of docks, built a bulkhead platform along the bulkhead line, as shown on the map annexed to the grant, at the foot of Seventh avenue and has collected and received for its own use whatever wharfage and profits arose therefrom.   This was done without notice to, or consent of, the plaintiffs or their predecessors in title. Certain other structures have been erected under licenses from the city, within the lines of the premises described in the grant and outside of the present line of filling.   For the most part these structures have been erected within the lines of the streets excepted and reserved out of the grant.   The plaintiffs ask that the city be required to remove that portion of the bulkhead already constructed at the foot of Seventh avenue, or in default thereof that it be required to pay to plaintiffs the value of the wharfage, cranage, advantages and emoluments arising therefrom, and to account for the wharfage and cranage already realized therefrom,  and that all licenses for other structures, either

floating or on piles, within the limits of the grant be revoked, and said structures removed, and the city be restrained from issuing further licenses for like structures. A number of cases involving similar grants have come before the courts for determination, and it is well settled so far as concerns the ownership of the land that the city retains title to so much of the land as lies within the exterior lines of the projected streets and avenues, while the grantee becomes the absolute owner of the land between the streets. Duryea v. Mayor, 62 N. Y. 592; 69 id. 477; Langdon v. Mayor, 93 id. 149. Hence the grantees and their successors in interest have no right to fill in or occupy for any purpose, without permission of the city, any portion of the land under water lying within the projected streets, nor, on the other hand, has the city the right, without like permission from the grantees, to occupy for any purpose or license others to occupy any portion of the land under water lying between the projected streets. So far therefore as concerns any structures floating or on piles, which occupy land within the boundaries of the grant and between the projected streets the plaintiffs are entitled to a judgment for their removal and an injunction against the granting of licenses in the future.

As to the structures, other than the bulkhead at Seventh avenue, which lie wholly within the lines of the projected streets, a different question is presented. As has been said the property which they occupy remains the property of the city, and the plaintiffs have no interest in them or concern as to their maintenance unless it is to be spelled out of the grant. That grant included the right to have and enjoy the wharfage and cranage advantages and emoluments growing or accruing by or from "that part of the exterior line of said city lying on the easterly side of the hereby granted premises lying on the Harlem river." The point at which these emoluments were to be collected is thus precisely defined, and, reading the whole grant in conjunction with the map accompanying it, there can be no doubt that this exterior line means the easterly line of Exterior street. Before wharfage and cranage can be realized at that point it is necessary that Exterior street shall be constructed. Even assuming that, when Exterior street has been constructed, the plaintiffs will have the right to take wharfage and cranage opposite the ends of the streets, as well as opposite the intervening land, there is no ground for an infer-

ence that the parties intended that the grantees in the conveyance
were to take wharfage at the foot of any street at any point
farther inland than the exterior line of the city on the easterly
side of Exterior street. Mayor v. Law, 125 N. Y. 380, 393.
The plain meaning of the grant was that the city was to determine
when Exterior street should be constructed and that the plain-
tiffs' right to wharfage and cranage should accrue when, and not
until this was done. So far then as concerns the structures
erected or floating within the lines of the projected streets the
plaintiffs have no right to complain of them. as trespassers be-
cause they occupy no land to which the plaintiffs have title, and
they cannot demand their removal, or ask to receive the profits de-
rived from them by the city, as. infringement upon the right of
wharfage and cranage conveyed by the grant, because such right
will attach only when Exterior street has been completed.

There remains the question as to the bulkhead erected by the city
at the foot of Seventh avenue, the easterly line of which is the east-
erly line of Exterior street as shown on the map attached to the
grant, and the easterly line of the premises described in the grant.
The defendant claims that even if the plaintiffs should be required
or authorized to build and actually should build and maintain the
streets and avenues mentioned in the grant, including Exterior
street, they would have no right under the terms of the grant to
any of the wharfage and profits accruing from those portions
of the exterior line of Exterior street which lie in front of the
several streets running through the premises, and that, as the
bulkhead now under consideration is at the foot of one of the
avenues excepted from the grant, and the land upon which it is
erected belongs to the defendant, the plaintiffs have no right to
any of the profits derived therefrom. A similar question was
presented and passed upon by the Court of Appeals adversely to
the defendant's contention. Mayor v. Law, *supra*. I can see no
escape from the authority or the reasoning of that case, and I
find no material difference between the facts which present the
question in this case, and those which presented a similar question
in that case. Nor does it in my opinion affect the plaintiffs'
rights in the premises that the city has undertaken to build the
bulkhead itself instead of requiring the plaintiffs to build it. It
is true that it was said, of grantees under a similar grant in Mayor
v. Law, *supra*, that " when they had constructed Tompkins street

or any portion of it, upon request of the city, then and not until then, can they commence to take wharfage." There was no question in that case, however, of taking wharfage from a part of Tompkins street constructed by the city. The defendants in that action had undertaken, without order or permission, to erect a wharf and collect wharfage, and this the court held they could not do. Under the grant to plaintiffs' predecessors they were not only required to construct Exterior street and the other streets when ordered by the city, but were expressly authorized to do so. Nothing was left to the city but the right to determine when such construction should be undertaken. When it had determined that Exterior street should be constructed, the plaintiffs had the right to construct it and thereupon to collect and enjoy the wharfage and emoluments. The city might postpone indefinitely, or so long as it saw fit, the plaintiffs' right to collect wharfage by neglecting to order Exterior street to be constructed and by refusing permission for its construction. But whenever it was determined that the street or any portion of it should be constructed the plaintiffs were entitled to undertake the construction and thus entitle themselves to the wharfage. While the city could postpone the collection of wharfage by postponing the construction of the street, it could not nullify the grant and defeat the plaintiffs' rights thereunder, by constructing the street itself without having first afforded the plaintiffs an opportunity to comply with their covenant to construct it when required to do so. When the city built the bulkhead at the foot of Seventh avenue it performed a part of the work which plaintiffs had agreed to do, and which we are bound to assume they would have done if required. As to the portion so constructed the city, by this act, waived the right to require the plaintiffs to build, but did not and could not defeat the plaintiffs' right to wharfage, which attached as soon as the bulkhead was completed. The present bulkhead was constructed in 1897. Prior to that time there had been piles driven and platforms erected to facilitate the progress of certain public improvements, but it does not appear that these were in the nature of a permanent bulkhead. It does appear that the city collected no wharfage until November, 1897. The plaintiffs are entitled to a judgment that they are entitled to the wharfage, cranage, emoluments, and profits to be derived from the bulkhead at the foot of Seventh

avenue, and to an accounting for the value of such rights since November 16, 1897, and for the payment of the permanent value of such rights if the city elects to retain the same for its own use and benefit.

The form of the decision and decree may be settled on notice, and, since neither party has been wholly successful the decree will be without costs to either party.

Judgment accordingly.