(143 App. Div. 258.)

In re WEST 134TH ST. IN CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.    March 24, 1911.)

1. RAILROADS (§ 65*)—RIGHT OF WAY—CONSENT OF PUBLIC AUTHORITIES—
    EFFECT.
        Land occupied by the railroad company in the city of New York along the Hudson river lay a little to the west of Twelfth avenue, which land formerly was partly above and partly below high-water mark.    All the land between high and low water mark was vested in the city of New York by the Dongan charter of 1686, and the land under water west of the low-water mark was vested in the city by Laws 1826, c. 58, and Laws 1837, c. 182.    Thus the city became owner of all lands lying west of high-water mark.    In May, 1847, the common council passed an ordinance permitting the Hudson River Railroad Company to construct a double track along the Hudson River from Spuyten Duyvil creek to Canal street, subject to certain regulations.    The railroad was partly laid out over land below high-water mark then belonging to the city.    *Held*, that the title to such lands remained in the city, subject to an implied license to the company to use it for railroad purposes.

        [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 145, 151;  Dec. Dig. § 65.*]

2. NAVIGABLE WATERS (§ 37*)—LAND UNDER WATER—GRANTS—RESERVATIONS.
        The title of the railroad company to the strip of land it occupies at 134th street is derived from the owner in fee to so much of the strip as lies above high-water mark.    As to land below the high-water mark, such grantors only owned the preferential right of the owner of the upland to a grant of the land under water.    In March, 1852, the mayor, aldermen, and commonwealth of New York City with such grantor granted a piece of land bounded on the north by the center line of 135th street, on the east by the original line of high-water mark, on the south by the center line of 133d street, and on the west by the westerly line of 13th avenue, being the exterior line of the city, reserving out of the premises granted so much as formed part of 134th street and others for public highways as shown on an annexed map.    *Held*, that under the reservation the city retained title to the land shown on the map as intended streets, including the bed of 134th street from the original high-water mark westwardly to the Hudson river, subject to the right of way of the railroad company.

        [Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 201–227;  Dec. Dig. § 37.*]

3. EMINENT DOMAIN (§ 47*)—PROPERTY SUBJECT TO ACQUISITION—LAND USED
    FOR RAILWAY PURPOSES.
        That part of a proposed street consists of land used for railroad purposes does not prevent the opening of the street by the city, and the acquisition of the necessary title to the lands required, because the use of the land for railroad purposes is not necessarily inconsistent with its use for highway purposes.

        [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 107–120;  Dec. Dig. § 47.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. EMINENT DOMAIN (§ 169*)—PROPERTY SUBJECT TO ACQUISITION—RAILROAD
    COMMISSION—"PROCEEDINGS."
        Railroad Law (Laws 1890, c. 565, as amended by Laws 1898, c. 520) §
    61, provides that in constructing a street or new portion thereof across a
    steam surface railroad notice shall be given by the municipality to the
    railroad company, and, if the municipality shall determine that such
    street is necessary, it shall apply to the Board of Railroad Commissioners
    before any further proceedings are taken to determine whether such street
    shall pass over or under such railroad, or at grade. *Held*, that the words
    "before any further proceedings are taken" means proceedings to physi-
    cally make, grade, and open the streets, and not proceedings to acquire
    title, and therefore, where hearing on due notice was had on the ques-
    tion of necessity, the city could proceed to acquire title to the land re-
    quired for the street, without first applying to the Railroad Commis-
    sioners.
        [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 461;
    Dec. Dig. § 169.*
        For other definitions, see Words and Phrases, vol. 6, pp. 5631–5638.]

Appeal from Judgment on Report of Referee.

In the matter of the application of the City of New York to acquire
title to lands and to open and extend West 134th street. From an
order confirming the report of a referee, and dismissing the petition,
the City of New York appeals. Reversed and remitted to the Special
Term.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE,
SCOTT, and MILLER, JJ.

Joel J. Squier, for appellant.
H. J. Uhl, for respondent.

SCOTT, J. This is an appeal by the city of New York from an
order confirming the report of a referee.

The proceeding is the usual street opening proceeding for acquiring
title to so much of the land required to construct West 134th street from
Broadway to the Hudson river, as is not already owned by the city.
The proceeding was initiated by a petition in the customary form, to
which the New York Central & Hudson River Railroad Company in-
terposed an answer. The court at Special Term appointed commis-
sioners of estimate and assessment, and at the same time appointed a
referee to take proof concerning and to report upon the issues of fact
raised by said petition and answer. Upon the coming in of his report,
it was confirmed, and the petition dismissed in so far as it refers to
lands within the lines of West 134th street between the easterly line of
the lands of the New York Central & Hudson River Railroad Company
and the Hudson river. This, in effect, stops the street at the line of the
railroad. This order was based upon findings of the referee to the
effect that the city of New York had not acquired, prior to the institu-
tion of the proceedings, legal title to any portion of the proposed street
lying between the easterly line of the railroad company's property and
the Hudson river, and that the city had not taken steps for a hearing
before the Railroad Commissioners under section 61 of the railroad
law (Laws 1890, c. 565, as amended by Laws 1898, c. 520), which he

considered essential before the proceeding to acquire title could be proceeded with. We think that the referee erred on both questions. The land occupied by the railroad company at this point lies a little to the west of Twelfth avenue upon land which formerly was partly above and partly below high-water mark. All of the land between high and low water mark was vested in the mayor, aldermen, and commonalty of the city of New York (predecessor of the present city of New York) by the Dongan charter of 1686 (Mayor, etc., v. Hart, 95 N. Y. 443; Langdon v. Mayor, etc., 93 N. Y. 129), and the land under water outside of the low-water mark was vested in the city by Laws 1826, c. 58, and Laws 1837, c. 182. Thus the city became the owner of everything lying west of high-water mark.

In May, 1847, the common council adopted an ordinance giving permission to the Hudson River Railroad Company to construct a double track of rails along the Hudson river from Spuyten Duyvil creek to Canal street, subject to certain regulations as to grading, regulating, paving, and keeping in repair the streets traversed or intersected. These regulations the company, by contract, undertook to observe and carry out. The railroad line as laid out was partly over land below high-water mark, then belonging to the city, but it is not contended that the assent of the city to the location of the line operated to convey to the company any title to the land below high-water mark, or any right thereto beyond an implied license to occupy and use it for railroad purposes. The title remained in the city. N. Y. C. & H. R. R. R. Co. v. Aldridge, 135 N. Y. 83, 32 N. E. 50, 17 L. R. A. 516. The title of the railroad company to the strip of land which it occupies at 134th street is derived from George N. Lawrence and Newbold Lawrence, as executors, etc., of John B. Lawrence, deceased, who on January 5, 1848, conveyed the strip to the company by appropriate description. The Lawrence executors appear to have owned in fee so much of the strip as lay above high-water mark, and this they conveyed with covenants of title. As to land below high-water mark, the title to which still remained in the city of New York, they owned only the preferential right of the owner of the upland to a grant of the land under water, and their deed shows that this is all they undertook to convey respecting the land below high-water mark. On March 1, 1852, the mayor, aldermen, and commonalty of the city of New York granted with Cornelius Lawrence, by one of the familiar water grants, a piece of land bounded on the north by the center line of 135th street, on the east by the original line of high-water mark as it runs, on the south by the center line of 133d street and on the west by the westerly line of Thirteenth avenue, being the exterior line of the city established by law, "being all the premises lying west of the line of original high-water mark as the same was designated upon a map hereto annexed made by John J. Serrell, city surveyor, and dated March 1st, 1852, *saving and reserving from and out of the hereby granted premises so much thereof* as by said map annexed forms part or portions of the One Hundred and Thirty-Third, *One Hundred and Thirty-Fourth* and Thirty-Fifth streets and the Thirteenth avenue for the use and purposes of public streets, avenues, and highways as hereinafter mentioned." It appears from the map referred to in the foregoing grant that 134th street as

depicted thereon coincides with the street the title to which is sought to be acquired in this proceeding.

It is well settled that under the reservations contained in the grant the city retained title to the land shown on the map as intended streets. Mayor v. Law, 125 N. Y. 380, 26 N. E. 471; Consolidated Ice Co. v. Mayor, 166 N. Y. 92, 59 N. E. 713; Mayor, etc., v. N. Y. C. & H. R. R. R. Co., 69 Hun, 324, 23 N. Y. Supp. 562, affirmed 147 N. Y. 710, 42 N. E. 724. This left in the city title to the bed of 134th street from the original high-water mark westwardly to the Hudson river, including the westerly part of the line of the railroad, as to which, however, the city's title was probably subject to the right of the railroad company to use it under its license. The referee clearly erred, therefore, in finding that the city of New York had not acquired legal title to that portion of the proposed West 134th street lying between the easterly line of the railroad property and the Hudson river. In fact, it has title to all of it lying west of the original high-water mark. The fact that a part of the proposed street consists of land now used for railroad purposes does not prevent the opening of the street by the city, and the acquisition of the necessary title to the lands required, because the use of land for railroad purposes is not necessarily inconsistent with its use for highway purposes. N. Y. C. & H. R. R. R. Co. v. City of Buffalo, 200 N. Y. 113, 93 N. E. 520.

The next question to be considered is whether or not section 61 of the railroad law (chapter 565, Laws 1890, as amended by chapter 520, Laws 1898) is an obstacle to further proceedings to acquire title. That section reads as follows:

"Sec. 61. When a new street, avenue or highway, or new portion of a street, avenue or highway shall hereafter be constructed across a steam surface railroad, other than pursuant to the provisions of section sixty-two of this act, such street, avenue or highway or portion of such street, avenue or highway, shall pass over or under such railroad or at grade as the Board of Railroad Commissioners shall direct. Notice of intention to lay out such street, avenue or highway, or new portion of a street, avenue or highway, across a steam railroad company shall be given to such railroad company by the municipal corporation, at least fifteen days prior to the making of the order laying out such street, avenue or highway by service personally on the president or vice president of the railroad corporation, or any general officer thereof. Such notice shall designate the time and place and when and where a hearing will be given to such railroad company, and such railroad company shall have the right to be heard before the authorities of such municipal corporation upon the question of the necessity of such street, avenue or highway. If the municipal corporation determines such street, avenue or highway to be necessary, it shall then apply to the Board of Railroad Commissioners *before any further proceedings are taken*, to determine whether such street, avenue or highway shall pass over or under such railroad, or at grade, whereupon the said Board of Railroad Commissioners shall appoint a time and place for hearing such application, and shall give such notice thereof, as they judge reasonable, not, however, less than ten days, to the railroad company whose railroad is to be crossed by such new street, avenue, highway or new portion of a street, avenue or highway, to the municipal corporation and to the owners of land adjoining the railroad and that part of the street, avenue or highway to be opened or extended. The said Board of Railroad Commissioners shall determine whether such street, avenue or highway, or new portion of a street, avenue or highway, shall be constructed over or under such railroad or at grade; and if said board determine that such street, avenue or highway shall be carried across such railroad above grade, then the said

board shall determine the height, the length and the material of the bridge or structure by means of which such street, avenue or highway shall be carried across such railroad, and the length, character and grades of the approaches thereto; and if said board shall determine that such street, avenue or highway shall be constructed or extended below the grade said board shall determine the manner and method in which the same shall be so carried under, and the grade or grades thereof, and if said board shall determine that said street, avenue or highway shall be constructed or extended at grade, said board shall determine the manner and method in which the same shall be carried over said railroad at grade and what safeguards shall be maintained. The decision of the said board as to the manner and method of carrying such new street, avenue, or highway, or new portion of a street, avenue or highway, across such railroad, shall be final, subject, however, to the right of appeal hereinafter given. The decision of said board rendered in any proceeding under this section shall be communicated within twenty days after final hearing to all parties to whom notice of the hearing in such proceeding was given or who appeared at such hearing by counsel or in person."

It will be seen that this section provides for two hearings when it is proposed to lay out a highway across a steam railroad line, of both of which the railroad company is entitled to notice. One is before the municipal authorities having power to determine whether such proposed highway is necessary. Such a hearing was had in the present case and due notice was given to the railroad company, who attended by counsel, and was afforded opportunity to be heard. The second hearing provided for is before the Railroad Commissioners, and the question is whether this second hearing must be had before title to the proposed street is acquired. The language is that the municipal corporation having decided upon the necessity for the street must apply to the Board of Railroad Commissioners "before any further proceedings are taken." Does this mean proceedings to acquire title, or proceedings to physically make, grade, and open the street? We think that the words must be taken in the latter sense, as seems to be apparent upon a consideration of what is to be submitted to the commissioners, which is "whether such street, avenue or highway shall pass over or under such railway, or at grade." Reading the whole section, it is clear that the Railroad Commissioners are given no authority to determine whether or not there shall be a street, but only, if a street is determined upon, how it shall be carried over the line of the railroad. It would be illogical to construe the statute in such a manner as to stay the acquisition of title pending this determination by the Railroad Commissioners, and will satisfy both the language and the intent to so construe it as to stay all proceedings looking to the actual physical construction of the street until it is determined how it shall be constructed. It is true that in the opinion of the Court of Appeals in Matter of Ludlow Street, City of Yonkers, 172 N. Y. 542, 65 N. E. 494, there are expressions which are broad enough to require that the application to and determination by the Railroad Commissioners most precede an application to acquire title. But an examination of that case shows that the city of Yonkers had omitted to give the railroad company due notice of a hearing before the municipal authorities on the question whether the proposed street was necessary, and all the court was called upon to decide was whether such a hearing was requisite before title could be acquired, and that

128 N.Y.S.—38

question was really the only one discussed. That it was requisite is all that the court should be understood as having decided. In N. Y. C. & H. R. R. R. Co. v. City of Buffalo, supra, there is a clear intimation that a municipality may acquire title to land required for a public street before making any application to the Railroad Commissioners, but that:

"When the municipality decides to open the same to the use of the public, its construction across the roadway of a railroad corporation must conform to the determination of the Public Service Commission." 200 N. Y. 120, 93 N. E. 522.

It follows that the report of the referee should not have been confirmed. The order appealed from must therefore be in all things reversed, with $10 costs and disbursements, and the motion to confirm the referee's report denied, with $10 costs, and the case remitted to the Special Term to proceed in accordance with the opinion. All concur.