In the Matter of Acquiring Title by THE CITY OF NEW YORK, Appellant, to Lands Required as an Addition to the WILLARD PARKER HOSPITAL.

## THE CONSOLIDATED GAS COMPANY OF NEW YORK, Respondent.

Statutes — value and effect of practical construction of statute by public officers or others entitled to enforce it — adverse possession — bulkhead in navigable river — when occupation of filled-in land behind such bulkhead may ripen into title by adverse possession.

1. The practical construction of a statute by those for whom the law was enacted or by public officers whose duty it is to enforce it, acquiesced in by all for a long period of time, is of great importance in its interpretation in a case of serious ambiguity.

2. While it is unlawful to fill in the bed of a navigable river with solid material outside the bulkhead line, it is intended that the land within the bulkhead line shall be filled in for use as wharves and docks, and while a person building a wharf or dock on a bulkhead line may be guilty of a trespass, he is not guilty of committing or maintaining a nuisance, and his action, if long continued, may ripen into title by adverse possession.

3. This proceeding was instituted by the city of New York to acquire title in fee to certain lands lying between East Fifteenth and East Sixteenth streets and extending to the pierhead line in the East river, excepting therefrom such portions thereof as were already owned by it. The Consolidated Gas Company, this respond-

1

ent, it was alleged, is the owner, or has some interest in the lands described. Commissioners of estimate and appraisal were duly appointed by the court to ascertain the compensation that should be made for the property sought to be acquired. The commissioners found that the ownership of the lands was not sufficiently clear to enable them to adopt a definite rule of appraisal. The court thereupon made an order appointing a referee to take testimony and report with his opinion upon the question of ownership. The report of the referee was in favor of the city, but the court, at Special Term, denied the motion to confirm it, and the order in that regard was unanimously affirmed at the Appellate Division. This appeal is taken from that determination. The lands in dispute are those on which a part of the gas company's manufacturing and distributing plant is situated. The gas company's claim of title is based upon adverse possession, it and its predecessor in title having constructed its plant and exercised many rights of ownership of the land involved during many years, which acts were in hostility to and adverse to the title of the city. The answer of the city to that claim is that the land thereof was not, and could not be, acquired by adverse possession. Upon examination of the various conveyances, ordinances, statutes and decisions relating to the property in question, *held*, that the assertion of title by adverse possession to the lands in question must be sustained.

*Matter of City of New York* (*Willard Parker Hospital*), 166 App. Div. 106, affirmed.

(Argued October 4, 1915; decided January 18, 1916.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered February 5, 1915, which affirmed an order of Special Term denying a motion to confirm the report of a referee appointed in condemnation proceedings to take testimony and report upon the question of ownership.

The following questions were certified:

"1. Was the respondent, the Consolidated Gas Company of New York, on January 31, 1907, the owner in fee of the following described property in the borough of Manhattan, city of New York, to wit: All of the lands between Fourteenth and Fifteenth streets from a line

413 feet west of and parallel to Avenue C to the outer line of the marginal street and wharf, as now existing along the East river, known as East street, and all the lands between Fifteenth and Sixteenth streets, Avenue C, and the said outer line of said marginal street and wharf, as now existing along the East river, known as East street. Also the bulkhead rights and wharf rights along the said marginal street and wharf, known as East street, from the northerly side of Fourteenth street to the southerly side of Fifteenth street, and from the northerly side of Fifteenth street to the southerly side of Sixteenth street. Excepting, however, thereout Avenues C and D and said East street, and also excepting a plot of land extending from Fifteenth to Sixteenth streets lying east of a line drawn parallel to and distant 235 feet easterly from the easterly line of Avenue C and thence extending easterly 250 feet?

"2. If the first question is answered in the negative, was the respondent, the Consolidated Gas Company of New York, on January 31, 1907, the owner in fee of any part of the said property?

"3. If the respondent, the Consolidated Gas Company of New York, was not on January 31, 1907, the owner of the fee of the whole of the property described in question No. 1, of what part of the said property was the said Consolidated Gas Company of New York the owner in fee?"

The facts, so far as material, are stated in the opinion.

*Louis H. Hahlo, Corporation Counsel (Charles J. Nehrbas, and Charles D. Olendorf of counsel), for appellant.* No part of Tompkins street was conveyed by the said grant to Bradford. The land lying within all of the streets included within the general description contained in the grant was excepted and reserved therefrom, and title thereto did not pass under the grant but remained in the city. (*Langdon* v. *Mayor, etc.,* 93

N. Y. 129; *Mayor, etc.*, v. *Law*, 125 N. Y. 380; *Mayor, etc.*, v. *N. Y. C. & H. R. R. R. Co.*, 69 Hun, 324; 147 N. Y. 710.) By chapter 763 of the Laws of 1857 the bulkhead line or line beyond which there should be no solid filling on the East river between the southerly line of Eighth street and the southerly line of Eighteenth street was established along the easterly side of Tompkins street, as such street was established by chapter 166 of the Laws of 1826. (*People* v. *Vanderbilt*, 26 N. Y. 287; *Cox* v. *Mayor, etc.*, 103 N. Y. 519; *Town of South Ottawa* v. *Perkins*, 94 U. S. 270; *Regina* v. *Haughton*, 1 El. & Bl. 501; *B. College* v. *Bishop*, 4 Taunt. 831; *S., etc.; Ry. Co.* v. *Jordan*, 113 Ga. 687; *S. V. O. Asylum* v. *City of Troy*, 76 N. Y. 108; *People* v. *Commissioners*, 54 N. Y. 276; *Wetmore* v. *Brooklyn Gas Light Company*, 42 N. Y. 384; *Cummings* v. *City of Chicago*, 188 U. S. 410.) On January 31, 1907, when title vested in the city in this proceeding the respondent Consolidated Gas Company of New York had not acquired title by adverse possession or prescription to any of the property described in the petition herein. (*Casey* v. *Dunn*, 25 J. & S. 381; *Matter of Dept. of Public Works*, 53 Hun, 556; *Freedman* v. *Oppenheim*, 80 App. Div. 487; *Kneller* v. *Lang*, 137 N. Y. 589; *Heller* v. *Cohen*, 154 N. Y. 299; *Berkowitz* v. *Brown*, 23 N. Y. Supp. 792; *Leary* v. *Corwin*, 63 App. Div. 151; *Luce* v. *Curley*, 24 Wend. 451; *Miller* v. *L. I. R. R. Co.*, 71 N. Y. 380; *Mayor, etc.*, v. *Carleton*, 113 N. Y. 284.) Payment of taxes is no evidence of possession actual or constructive. (*Mayor, etc.*, v. *Law*, 125 N. Y. 380; *Cons. Ice Co.* v. *Mayor, etc.*, 166 N. Y. 92; *Baker* v. *Union Mutual L. Ins. Co.*, 43 N. Y. 283; *Boardman* v. *L. S. & M. S. Ry. Co.*, 84 N. Y. 157; Bigelow on Estoppel [5th ed.], 626.)

*Truman H. Baldwin* for respondent. On January 31, 1907, the day on which title to the premises taken in this

proceeding vested in the city of New York, the Consolidated Gas Company of New York was the owner in fee simple absolute and actually possessed of the lands in question. (*Mayor, etc., v. Hart*, 95 N. Y. 443; *Williams v. Mayor, etc.*, 105 N. Y. 419; *Duryea v. Mayor, etc.*, 96 N. Y. 477; *Bell v. City of New York*, 77 App. Div. 437; *Bedlow v. Stillwell*, 158 N. Y. 292; *Langdon v. Mayor, etc.*, 93 N. Y. 129; *Mayor, etc., v. Law*, 125 N. Y. 380.) The lands have been in the actual, exclusive, continuous, uninterrupted, open, visible and notorious adverse possession of the Manhattan Gas Light Company and of its successor, the Consolidated Gas Company of New York, hostile to the city of New York and to all the world for more than half a century, under claim of title under written instruments and as actually improved and used as a gas manufacturing and distributing plant. (*Timpson v. Mayor, etc.*, 5 App. Div. 424; Code Civ. Pro. §§ 362, 363, 365, 366, 369, 370; *Knapp v. City of New York*, 140 App. Div. 289; *Matter, etc., of Niagara Reservation*, 37 Hun, 537; *F. L. H. & P. Co. v. State*, 200 N. Y. 400; *Nichols v. City of Boston*, 98 Mass. 39; *Hindley v. Manh. Ry. Co.*, 185 N. Y. 335.) Had the Consolidated Gas Company of New York no other title, it has title by prescription. (*Timpson v. Mayor, etc.*, 5 App. Div. 424; *Nichols v. City of Boston*, 98 Mass. 39; *Bell v. City of New York*, 77 App. Div. 437; *Lewis v. N. Y. & H. R. R. Co.*, 162 N. Y. 202; *Taggart v. Manhattan Ry. Co.*, 57 Misc. Rep. 184; *Trustees of Brookhaven v. Strong*, 60 N. Y. 56; 2 Greenl. Ev. §§ 544, 545, 546; *Scallon v. Manhattan Ry. Co.*, 185 N. Y. 359; 186 N. Y. 528; *Rothman v. Interboro R. T. Co.*, 155 App. Div. 192.)

CUDDEBACK, J. This proceeding was instituted by the city of New York in or about the month of December, 1906, to acquire title in fee to certain lands in the city described generally as lying between East Fifteenth and

East Sixteenth streets, and extending east from a line about 191 feet west of Avenue D to the pierhead line in the East river, established by the secretary of war June 9, 1903, "excepting therefrom such portions thereof as are owned by the city of New York." The Consolidated Gas Company of New York it was alleged is the owner, or has some interest in the lands described.

Commissioners of estimate and appraisal were duly appointed by the court to ascertain the compensation that should be made for the property sought to be acquired. The commissioners subsequently found and decided that the ownership of the lands was not sufficiently clear to enable them to adopt a definite rule of appraisal. The court thereupon made an order appointing a referee to take testimony and report with his opinion upon the question of ownership. The report of the referee was in favor of the city, but the court, at Special Term, denied the motion to confirm it, and the order in that regard was unanimously affirmed at the Appellate Division. The Appellate Division has granted leave to appeal from its determination and has certified three questions which bring its decision before this court for review.

It is necessary, to a clear understanding of the issues between the parties, to consider briefly the history of the title to the lands involved. The premises are embraced within the provisions of chapter 166 of the Laws of 1826, which reads in part as follows:

"Section 1. Be it enacted  *  *  *  that Tompkins street along the East river as laid out and approved by the mayor, &c.,  *  *  *  shall be the permanent exterior street on the East river between Rivington street and 23rd street  *  *  *  and all grants made or to be made by the mayor, &c. shall be construed as rightfully made to extend thereto."

The act of 1826, referred to and adopted chapter 86 of the Laws of 1813. The act of 1813 authorized the city to lay out, according to a plan to be agreed upon, regular

streets and wharves which should be completed at the expense of the proprietors of the adjoining lands, and provided that such proprietors should fill in and level at their own expense the spaces lying between their several lots and the said streets and wharves, and upon so doing should become the owners of the intermediate spaces of ground in fee simple.

On May 10, 1848, one Richard F. Blydenburg, being then the owner of a large tract of land north of Fourteenth street, including the premises in question, conveyed the tract to one Hezekiah Bradford, and on June 22, 1848, the city of New York for the consideration of $9,000 granted to Bradford the land in front of such tract lying between high-water mark and the easterly side of Tompkins street, excepting so much thereof as was required for streets. In the grant, Bradford, for himself and his heirs and assigns, covenanted that he would within three months next after being thereunto required by the city, but not until he should be thereunto required, at his own proper costs and charges, build, erect, make and finish, and forever maintain, certain good and sufficient firm bulkheads, wharves, avenues or streets, among others, a bulkhead, wharf, avenue or street 70 feet in width, extending from Fourteenth street past Sixteenth street to the northerly line of the premises granted, being a portion of the intended new street called Tompkins street. He also covenanted for himself, his heirs and assigns, that he would not build or erect any wharf, pier or other obstruction in the East river in front of Tompkins street without the permission of the city.

Tompkins street was never actually laid out, but as shown on the maps in evidence, it extended in front of the lands granted to Bradford in a northwesterly direction over the waters of a small cove or bay and at Fifteenth street was about 2,250 feet east of low-water mark. Bradford, or his immediate successors in title, filled in the land described in the grant to the line of Tompkins

street and so became the owner of the intermediate spaces as provided by the act of 1813 and the city became the owner of the land reserved for streets. (*Williams* v. *Mayor, etc., of N. Y.*, 105 N. Y. 419.) The Manhattan Gas Light Company, which took title in 1855, proceeded to carry the filling over Tompkins street and several hundred feet further east into the river. The lands in dispute are those in Tompkins street, and those wholly east thereof, on which a part of the gas company's manufacturing and distributing plant is situated. The gas company's claim of title, so far as it is here considered, is based upon adverse possession. The answer of the city to that claim is that the land in Tompkins street and east thereof was not, and could not, be acquired by adverse possession. It is necessary to further consider the statutes and ordinances.

It appears that in or about the year 1855 there was some apprehension that the New York harbor might become obstructed by the erection of too many piers. Chapter 121 of the laws of that year, which recites such apprehension, and that grants to occupy lands under the waters of the harbor were made without sufficient information, provided for the appointment of harbor commissioners to make surveys and examinations of the harbor and the obstructions therein, and report to the legislature the result of their investigation, together with their recommendation as to the establishment of such exterior lines as the commission might adopt beyond which no erection or permanent obstruction should be permitted. The act also provided that no grant to lands under water, in respect to which the harbor commissioners were required to report, should be made by the commissioners of the land office or the common council of the city until further direction of the legislature in the premises.

In December, 1856, the common council adopted an ordinance continuing East street northerly and parallel with Tompkins street, from Rivington street to Thirty-

eighth street, on lines which would bring it at Fifteenth
street out in the East river, about 400 feet east of Tomp-
kins street. This ordinance also provided that the sev-
eral avenues and numbered streets between Rivington
street and Thirty-eighth street should be extended by a
prolongation of their lines to East street, and that Tomp-
kins street should be discontinued north of Houston
street. The ordinance also provided that the proprietors
of lands opposite East street as established by the ordi-
nance, should make and complete East street, and should
fill in and level the spaces between their property and
East street.

This ordinance of the common council, so far as it
directed the filling in east of Tompkins street, was unau-
thorized for several reasons. The land to the east of
Tompkins street belonged to the state and the city had
no power to order that it be filled in (*Duryee* v. *Mayor,
etc., of N. Y.,* 96 N. Y. 477), and, furthermore, the ordi-
nance was in violation of chapter 121, Laws of 1855. The
common council, however, directed that a memorial be
presented to the legislature requesting that the ordinance
be confirmed.

The harbor commissioners appointed by the act of 1855
reported to the legislature in 1856 recommending certain
changes in the bulkhead and pier lines of the East river.
The Manhattan Gas Light Company had at that time
erected a bulkhead approximately on the line of the
extension of East street as proposed by the ordinance of
1856, and the changes recommended by the harbor com-
mission would require the removal, in part, of this
bulkhead.

The report of the harbor commissioners appointed by
the act of 1855 was referred to and was considered by the
committee on commerce and navigation of the senate.
The senate committee reciting the fact that the adoption
of the line recommended by the commission would involve
the removal of the bulkhead between Thirteenth and

Seventeenth streets "which, though an expensive struc-
ture, is unauthorized by the state or the city of New
York," requested the harbor commissioners to review
their proposed exterior line in front of the property.
The harbor commissioners reviewed their decision, as
requested, and changed their recommendation as to the
location of an exterior line in the East river. They pro-
posed that a line be adopted running south from Thirty-
eighth street to the northeast corner of the bulkhead at
the foot of Seventeenth street, and about 100 feet outside
of the bulkhead at the foot of Fourteenth street, and
thence to Corlaers Hook. The senate committee made
its report to the legislature, recommending that the
exterior line as revised by the harbor commissioners, run-
ning north along the New York shore of the East river
to the north-east corner of the bulkhead at Seventeenth
street, and thence to Thirty-eighth street, be adopted.

Pursuant to this report of the senate committee, chap-
ter 763 of the Laws of 1857 was passed. The first sec-
tion of that act provides that the bulkhead line or line of
solid filling and the pier line adjacent to the shores of the
port of New York, be established as the bulkhead and
pier lines recommended by the harbor commissioners
appointed under the act of 1855, *except* that the exterior
or the pierhead line from Ninth to Forty-ninth streets on
the New York side of the East river shall be the line
recommended by the committee on commerce and naviga-
tion of the senate. The act also provides that the harbor
commissioners shall file with the secretary of state the
maps referred to in the act, together with a minute
description by courses and distances of the lines estab-
lished by the act.

The harbor commissioners, as directed by the act of
1857, did file the maps and the description by courses and
distances of the lines referred to in the act. This descrip-
tion by courses and distances, and the maps also, place the
bulkhead line along the easterly line of Tompkins street

1916.]          Opinion, per CUDDEBACK, J.        [217 N. Y.]

as established by chapter 166 of the Laws of 1826, from Eighth street to Eighteenth street, and the pierhead line at Fifteenth and Sixteenth streets about 500 feet easterly of the bulkhead line.

If the maps and the description by courses and distances are taken as controlling, as the corporation counsel argues they should·be, then the evident efforts made by the committee on commerce and navigation not to disturb the existing structures between Thirteenth and Seventeenth streets were entirely defeated and those structures were unlawful. If, however, the act of 1857 be read with regard to the report of the senate committee, to which it makes specific reference, and which showed that it was not the intention to disturb the structures between Thirteenth and Seventeenth streets, then the bulkhead line was at the northeast corner of the existing bulkhead at Seventeenth street and coincided there with the pier line.

There is a manifest ambiguity in chapter 763 of the Laws of 1857, so far as the harbor lines in front of the property between Thirteenth and Seventeenth streets are concerned. The statute is not clear and it is proper to consider the contemporary and practical construction of the act by the city and the owners of the property affected.

The Manhattan Gas Light Company, adopting the construction of the act of 1857, that the bulkhead line was established at the northeast corner of the existing bulkhead at Seventeenth street, proceeded to complete the work of filling in between that bulkhead and the west line of Tompkins street from Fourteenth to Sixteenth streets, and to establish and maintain there its manufacturing and distributing plant, and to use the wharf for the purposes of its business. The bulkhead has remained in the same position and on the same lines to the present day. The lands have been enclosed by a fence, and have been assessed to and the taxes thereon have been paid by the gas company.

The Manhattan Gas Light Company was succeeded in ownership by the Consolidated Gas Company of New York in 1884. These two corporations, after the year 1857 and down to the time of the trial in this proceeding, used and occupied the land without any let or hindrance from the city or anybody else. All the happenings and incidents that follow the ownership of property have attended their use and occupation of the premises. The city has taken possession and has leased the bulkhead at the foot of Fourteenth, Fifteenth and Sixteenth streets and between Sixteenth and Seventeenth streets, and collected the rents therefrom.

In 1893 the secretary of war established on the part of the Federal government a bulkhead line from Fourteenth to Seventeenth streets, so that it coincides with the pierhead line at the northeast corner of Seventeenth street, and the water lines generally are those claimed to exist by the gas company.

The attack on the gas company's title in this proceeding is not to compel the removal of the bulkhead and of the filling back to the west line of old Tompkins street, but it is to acquire the lands and the bulkhead as the site of an addition to the Willard Parker Hospital. The land between Sixteenth and Seventeenth streets, east from the line of Avenue C, is occupied by the city for the extensive plant of the Willard Parker Hospital, and for certain buildings of the street cleaning department. The bulkhead in front of the city's property is constructed on a continuation of the bulkhead in front of the property of the gas company. This use by the city of the property in the block adjoining the gas company's holdings shows clear recognition on the part of the city that the bulkhead line is where the gas company says it is.

All these things, and many others of a similar nature, shown in the record, amount to a practical construction of chapter 763, Laws of 1857, to which the court should give effect. (*Duryee* v. *Mayor, etc., of N. Y.*, 96 N. Y.

477, 494; *City of New York* v. *N. Y. City Ry. Co.*, 193 N. Y. 543, 548; *Grimmer* v. *Tenement House Department*, 205 N. Y. 549, 550.) In the latter case the court said: "There is no question that the practical construction of a statute by those for whom the law was enacted or by public officers whose duty it is to enforce it, acquiesced in by all for a long period of time, is of great importance in its interpretation in a case of serious ambiguity."

If then the bulkhead line or line of solid filling established by the act of 1857 was the bulkhead actually existing at the time of the passage of the act, then the city became the owner in fee of the land between that bulkhead and Tompkins street. (*Williams* v. *Mayor, etc., of N. Y.*, 105 N. Y. 419; *Langdon* v. *Mayor, etc., of N. Y.*, 93 N. Y. 129.) The restriction upon the city's power to make grants, contained in the act of 1855 (Chap. 121), was repealed by chapter 360 of the Laws of 1858, and the city, if so minded, could have granted to the gas company the land back of the new bulkhead line as it had previously granted to Hezekiah Bradford the land back of Tompkins street. (*Williams* v. *Mayor, etc., of N. Y.*, *supra.*) If the city had the power to make such a grant, then the title might be acquired by prescription. (*People* v. *Vanderbilt*, 26 N. Y. 287.)

It is the claim of the Consolidated Gas Company that, after the act of 1857, its predecessor in title, the Manhattan Gas Light Company, had the right to make the filling under the ordinance of 1856, and it thereby became the owner of the land filled in, under chapter 86 of the Laws of 1813 aforesaid. (*Duryee* v. *Mayor, etc., of N. Y.*, *supra.*) It is not necessary to decide that question. It is certain that the Manhattan Company assumed and asserted the right to fill in under the statute, and thereafter constructed its plant and exercised the many rights of ownership of the land involved, which have already been referred to, which acts were in hostility and

adverse to the title of the city. Thus title by adverse possession was acquired. (*Timpson* v. *Mayor, etc., of N. Y.*, 5 App. Div. 424; *Knapp* v. *City of New York*, 140 App. Div. 289; *Nichols* v. *City of Boston*, 98 Mass. 39; *Lewis* v. *N. Y. & H. R. R. Co.*, 162 N. Y. 202.)

There is another view which may be taken of the case. The city does not claim title to the land east of Tompkins street by virtue of chapter 763 of the Laws of 1857, but bases its claim of title thereto on a grant from the commissioners of the land office made under chapter 474 of the Laws of 1871. That chapter authorized the commissioners of the land office to convey to the city certain lands under water as the mayor, aldermen and commonalty of the city should require. Pursuant to that statute the commissioners of the land office on September 28, 1871, made a grant to the mayor, etc., of all the right of the People of the state to the lands covered by water within and westerly of an exterior line 300 feet outside of the pierhead line established by chapter 763, Laws of 1857, and parallel with such pierhead line from Grand street to Sixty-fifth street, which is past the property in dispute here. After this grant in 1871 there was no apparent change in the occupation of such property by the gas company, and the city asserted no claim thereto. The city is in no better position under the act of 1871 than it would be if it had claimed title under the act of 1857. This proceeding was instituted, as the record shows, in December, 1906, and the adverse possession of the gas company prior to that time and after the grant of the commissioners of the land office in 1871 was for a sufficient length of time to create title by prescription.

The city urges in answer to the claim of title by adverse possession that no such title could be acquired to land in the bed of old Tompkins street, and that any obstruction to navigation placed in the river to the east of old Tompkins street was a nuisance, and, furthermore, that the covenants in the grant of 1848 to Bradford preclude the

grantee and those claiming under him from asserting title by adverse possession.

It is a well-settled rule of law that no title by adverse possession can be obtained to lands in a highway (*Driggs v. Phillips*, 103 N. Y. 77), but Tompkins street never was a highway and never was opened or used as such. By chapter 166, Laws of 1826, Tompkins street was established as a proposed street. Pursuant to that act the grant to Hezekiah Bradford was made, which, as already said, contained the covenant that the grantee, his heirs and assigns, should within three months next after they were thereunto required by the city, *but not until they were thereunto required*, build, erect, make and finish certain streets, among others, Tompkins street, and should thereafter maintain the same as public streets.

The fact is that from the year 1848, the date of the grant, to the present time, the city has never required or permitted the owner of the lands granted, or his successors, to build, erect, make and finish Tompkins street, but, on the contrary, the common council by its ordinance of December, 1856, declared Tompkins street discontinued.

Of course, the legislature had power to establish a street without any aid from the city, or against its will, but the legislative action with regard to Tompkins street seems to have been permissive rather than mandatory. After establishing the proposed street by the act of 1826, the legislature by chapter 268 of the Laws of 1835 authorized the city to designate where a permanent exterior street or line to the eastward of the city between Thirteenth and Twenty-third streets should be located to take the place of Tompkins street. Then again, the act of 1826 had contemplated that Tompkins street should be a *permanent exterior street*, but that purpose the legislature itself defeated by the act of 1857 as herein construed, when it extended the bulkhead line out into the river several hundred feet east of Tompkins street so that the street, if constructed, would not be an exterior street.

These acts of the legislature indicate that the legislative body was not insistent that Tompkins street should be a highway as provided in the act of 1826.

The city never actually laid out and opened a street to take the place of Tompkins street as authorized by chapter 268, Laws of 1835. By the same ordinance of December, 1856, which discontinued Tompkins street, the common council did indeed establish East street, but the ordinance in that regard was ineffectual. This court held in *Duryee* v. *Mayor, etc., of N. Y. (supra)*, that the ordinance of 1856, so far as it attempted to establish East street, and a bulkhead outside of Tompkins street, was annulled by chapter 763, Laws of 1857, but, in other respect, the ordinance was not questioned. The counsel for the city urges that the provisions of the ordinance of 1856 discontinuing Tompkins street failed for the reason that its provision establishing a new street to take the place of Tompkins street was unauthorized. (*Duryee* v. *Mayor, etc., of N. Y., supra.*)

The two provisions of the ordinance of 1856 are not so dependent upon each other that the provision discontinuing Tompkins street fell with the provision extending the bulkhead line further into the river. That certainly was not the view taken at the time, and Tompkins street was discontinued as matter of fact by the ordinance.

Tompkins street, though proposed by the act of 1826, as a permanent exterior street, became in time an interior and unnecessary street, which, if it were opened, would interfere with the use of the wharves and piers and adjacent lands between Fourteenth and Seventeenth streets by cutting across the same diagonally, and doing great damage to the property. According to the maps in evidence, a similar result would be produced as far south as Eighth street. On some of the maps in evidence, Tompkins street is shown by dotted lines. On others, as the tax and assessment map made in 1894, it is not shown at all. Between Fifteenth and Seventeenth

streets the bed of old Tompkins street is occupied by the buildings of the gas company and those of the city's street department, and to open the street now would mean the destruction of these buildings. All of this goes to show that the provisions of the ordinance of 1856 to discontinue the old street were not dependent upon the opening of a new street. It also shows that there was a final determination on the part of the common council to abandon all intention to open the street on the lines laid out in the act of 1826, and our attention is not called to any statute or rule of law which says the common council had not the power on the part of the city to so determine. The corporation counsel places great reliance upon the decision in *Mayor, etc., of N. Y.* v. *Law* (6 N. Y. Supp. 628; affd., 125 N. Y. 380). That case disallowed a claim of title by adverse possession to a part of Tenth street, but it involved no question of the abandonment of the street.

The city, to sustain its contention that the filling in done by the gas companies to the east of old Tompkins street is a nuisance, cites the case of *People* v. *Vanderbilt* (26 N. Y. 287). In that case the erection condemned as a nuisance was outside the bulkhead line, or line of solid filling. It is unlawful to fill in the bed of a navigable river with solid material outside the bulkhead line. The purpose of a bulkhead line is to define the extent to which solid filling may go. It is intended that the land within the bulkhead line shall be filled in for use as wharves and docks, and while a person building a wharf or dock on a bulkhead line may be guilty of a trespass, he is not guilty of committing or maintaining a nuisance, and his action if long continued may ripen into title by adverse possession. (*Timpson* v. *Mayor, etc., of N. Y.*, 5 App. Div. 424.)

The argument that the respondent is estopped by the covenant on the part of the grantee in the grant to Hezekiah Bradford to forever maintain Tompkins street as a public street depends upon whether the intention to lay

2

out and construct the street was abandoned. What has already been said upon the subject of an abandonment of the intention to lay out and construct the street applies. With the intention to construct the street abandoned, the covenant to maintain it fell to the ground. As to the covenant in the grant not to erect any wharf or pier in front of Tompkins street, it is sufficient to say that the filling there was permitted by the city. (*Duryee* v. *Mayor, etc., of N. Y., supra.*)

For all these reasons, the assertion of title by adverse possession to the lands in question made by the Consolidated Gas Company must be sustained. There are other questions raised by the appellant, but in view of the conclusion reached they are not material.

The order appealed from should be affirmed, with costs, and the first question certified should be answered by saying that the Consolidated Gas Company of New York on January 31, 1907, was the owner in fee of all the land described in the petition in this proceeding, with all the bulkhead and wharf rights in the East river, and it is not necessary to answer the first question any further or to answer the second and third questions at all.

SEABURY, J. (dissenting). This appeal involves the question whether the city of New York or the Consolidated Gas Company was the owner on January 31, 1907, of a portion of certain premises adjacent to the East river between East Fifteenth and Sixteenth streets. The Consolidated Gas Company claims title to a triangular parcel of land west of Tompkins street, and the city concedes that it has title to this parcel of land. The source of its title to this parcel of land is the grant to Bradford in 1848 from the city of New York. It also claims title to the property in the bed of Tompkins street between Fifteenth and Sixteenth streets and to the land east of the easterly line of Tompkins street between Fifteenth and Sixteenth streets and extending to the present

existing bulkhead excepting therefrom the bed of Avenue D. It is the claim of the Consolidated Gas Company that Tompkins street as established by the act of 1826 has been discontinued, and that East street, under the ordinance of 1856 and the statute of 1857 became the lawful exterior street, and that the adjacent owners who filled in the land between these two streets became, by virtue of the acts of 1813 and two prior similar statutes, the owners of such land as they had filled in. That such was not the effect of these statutes was held specifically as to the act of 1813 (R. L. 1813, ch. 86, §§ 220, 221) in *Nott* v. *Thayer* (2 Bosw. 10, 72, 73). In so far as the Consolidated Gas Company claims title to the bed of Tompkins street, *Nott* v. *Thayer* (*supra*) and *Driggs* v. *Phillips* (103 N. Y. 77) established that its claim is unfounded. *Nott* v. *Thayer* (*supra*) held that Tompkins street as established in 1826 was not discontinued or abandoned, and *Driggs* v. *Phillips* (*supra*) declares the well-settled rule that one cannot acquire title by adverse possession to a public street, and that the occupation of a portion of such street by an individual is a nuisance. The Consolidated Gas Company has no record title to the land in question. The resolution of the board of aldermen of December, 1856, gave it no title because (a) it attempted without authority to exercise rights over land under water which was owned by the state; (b) it was annulled by chapter 763 of the Laws of 1857, and (c) it could not lawfully authorize private individuals to become owners of land under water by filling in the land the title to which was in the state. That the resolution of the board of aldermen conferred no rights was held in *Duryee* v. *Mayor, etc., of N. Y.* (96 N. Y. 477). The respondent's contention that chapter 763 of the Laws of 1857 conferred title upon it is wholly untenable. That law when read in connection with the map to which it refers established the bulkhead lines as coincident with the easterly line of Tompkins street as laid out in

1826. Even if the provisions of the Laws of 1857 be deemed doubtful, which is the most favorable view to the respondent which it is possible to adopt, under well-settled rules, doubtful and ambiguous clauses will not be construed in favor of one who asserts title against the state. (*Cox* v. *Mayor, etc., of N. Y.*, 103 N. Y. 519, 526; *People* v. *N. Y. & S. I. F. Co.*, 68 N. Y. 71.) The act of the secretary of war approving a modification in the pierhead and bulkhead lines was incapable of establishing private rights, in the absence of the assent of the state. (*Cummings* v. *Chicago*, 188 U. S. 410, 431.) The state never gave its assent. The respondent acquired no title by adverse possession, because (a) adverse possession will not run against the state; (b) something more than possession is needed to establish title by adverse possession. The presumption is that the possession is in subordination to the actual title. (*Doherty* v. *Matsell*, 119 N. Y. 646; *Heller* v. *Cohen*, 154 N. Y. 299.) The actual title to the land in question was in the state. The fact that the respondent filled in land under water and erected buildings thereon, while the title to such land was in the state, neither gave it any title to the land in question nor furnished a basis upon which other rights could be predicated. (*Burbank* v. *Fay*, 65 N. Y. 57; *Driggs* v. *Phillips, supra; Knickerbocker Ice Co.* v. *Forty-second Street & G. St. F. R. R. Co.*, 85 App. Div. 530; affd., 176 N. Y. 408.) The respondent entered upon said land without any legal right so to do. Its act was an invasion of public rights and constituted a nuisance and a purpresture. (*People* v. *Vanderbilt*, 28 N.Y. 396; *People* v. *N. Y. & S. I. F. Co., supra.*) The payment of taxes is not evidence of title even when considered in connection with the other facts disclosed. (*Mayor, etc., of N. Y.* v. *Law*, 125 N. Y. 380; *Consolidated Ice Co.* v. *Mayor, etc., of N. Y.*, 166 N. Y. 92; *Archibald* v. *N. Y. C. & H. R. R. R. Co.*, 157 N. Y. 574; *Miller* v. *Long Island R. R. Co.*, 71 N. Y. 380.) Neither the collection of wharfage

1916.]          Dissenting opinion, per SEABURY, J.     [217 N. Y.]

by the department of docks, nor leases made by the state can serve to establish title in the respondent. The doctrine of estoppel cannot be invoked against the state to protect unlawful individual possession. Notwithstanding that the claim of the Consolidated Gas Company is now and always has been that it acquired title by adverse possession against the state prior to 1871, it is now suggested that even if this claim is untenable, by virtue of chapter 574 of the Laws of 1871 and the grant made thereunder, the city of New York acquired title to the land in dispute, and the adverse possession of the Consolidated Gas Company against the city commenced to run from that time and has since ripened into a good title by adverse possession. In reference to this claim it may be observed that while it is briefly asserted by the respondent it seems not to be seriously urged, as the main argument of the respondent is devoted to the attempt to establish that the Consolidated Gas Company had title to the land in 1871, and that the grant that was made in that year by the state to the city is invalid. This claim was not discussed in the elaborate report and opinion of the referee and was not suggested in the opinion of the learned Appellate Division. If the title of the Consolidated Gas Company rests upon this ground it rests upon a very insecure foundation. (1) To assert for the Consolidated Gas Company a title based on adverse possession against the city since 1871 is to assert for it a title different from and inconsistent with that under which it has claimed title. It has been and is now the contention of the Consolidated Gas Company that the grant of the land in 1871 by the state to the city was invalid. This contention has been shown to be untenable and the validity of the grant from the state to the city cannot plausibly be challenged. The Consolidated Gas Company having entered into possession and remained in possession asserting a title in hostility to the state should not now be

permitted to reverse its position and assert that it has title by adverse possession against the city which derived its title from the state. The entry by the Consolidated Gas Company into possession and its subsequent continuous possession have been in direct contradiction of this theory. In short, the claim that the Consolidated Gas Company in 1871 had a good title against the state is an absolute negation of the theory that it acquired title by adverse possession against the city since 1871. (2) The land in dispute lies east of the easterly line of Tompkins street and is adjacent to the premises which Bradford, the predecessor in interest of the Consolidated Gas Company, acquired. Said grantee covenanted for himself and his heirs and assigns that neither he nor they would "build or erect or cause to be built or erected any wharf or pier or other obstruction into the East river in front of Tompkins street without the permission of the said parties of the first part, their successors or assigns first had for that purpose." To sustain the Consolidated Gas Company's claim to title by adverse possession acquired against the city since 1871 is to do so in violation of the covenant of the predecessor in interest of the Consolidated Gas Company that it would not build any obstruction in the East river in front of Tompkins street without the permission of the city "first had for that purpose." This covenant on the part of the predecessor in interest of the Consolidated Gas Company was part of the consideration for the grant of the land west of Tompkins street which the Consolidated Gas Company now owns by virtue of its title thereto derived from Bradford. As a matter of fact the contention under which the Consolidated Gas Company has always claimed the title to the land east of Tompkins street is that prior to 1871 it had acquired title to this land by adverse possession. That contention having been shown to be unfounded, there is no reason why a theory in direct hostility to it should be adopted upon which the Consolidated Gas Company can

1916.]        Dissenting opinion, per SEABURY, J.        [217 N. Y.]

justify its appropriation of public property and require the city in this condemnation proceeding to pay to it the value of land which it does not own and which is the property of the city of New York. If the possession of the Consolidated Gas Company since 1871 was without claim of title or right it is subservient to the title of the city and not adverse to it. (*Humbert* v. *Rector, etc., Trinity Church*, 24 Wend. 587; *Harvey* v. *Tyler*, 2 Wall. 328.) If its possession was under a claim of title or right, it cannot assert a claim in hostility to that under which it entered and remained in possession. (*Knickerbocker Ice Co.* v. *Forty-second Street & G. St. F. R. R. Co., supra,* at p. 540.) The title under which the Consolidated Gas Company claimed was by adverse possession against the state and since that claim of title has been shown to be unfounded no presumption will be indulged in favor of a claim of title against the city. Moreover, the rule that adverse possession will not run against the state is applicable to the property of a municipal corporation in so far as such property is held by the municipality in trust for the public and not in its proprietary character. In *Commonwealth* v. *Alburger* (1 Whart. [Pa.] 469, 488) it was said (p. 486) that " It is well settled that lapse of time furnishes no defense for an encroachment on a public right; such as the erecting of an obstruction on a street or public square." In that case Mr. Justice SERGEANT said (p. 488): "These principles, indeed, pervade the laws of the most enlightened nations as well as our own code, and are essential to the protection of public rights, which would be gradually frittered away, if the want of complaint or prosecution gave the party a right. Individuals may reasonably be held to a limited period to enforce their right against adverse occupants, because they have interest sufficient to make them vigilant. But in public rights of property, each individual feels but a slight interest, and rather tolerates even a manifest encroachment, than seeks a dispute to set it right." The principles

stated in this case were approved by this court in *Burbank* v. *Fay* (65 N. Y. 57, 71). (See, also, Dillon on Municipal Corporations [5th ed.], § 1189.)

In my opinion the questions certified to us by the Appellate Division should be answered in the negative and the order appealed from should be reversed, with costs.

WILLARD BARTLETT, Ch. J., HISCOCK, CHASE, HOGAN and CARDOZO, JJ., concur with CUDDEBACK, J.; SEABURY, J., reads dissenting opinion.

Order affirmed.