In the Matter of STATE BANK OF KENMORE, Petitioner, against ELLIOTT V. BELL, as Superintendent of Banks of the State of New York, et al., Respondents.

Supreme Court, Special Term, Albany County, February 11, 1949.

*F. Paul Norton* for petitioner.

*Nathaniel L. Goldstein, Attorney-General (Wendell P. Brown* and *Ruth Kessler Toch* of counsel), for Elliott V. Bell, as Superintendent of Banks of the State of New York, and another, respondents.

*George C. Letchworth* and *Robert M. Hitchcock* for Marine Trust Company of Buffalo, respondent.

TAYLOR, J. This proceeding is brought pursuant to article 78 of the Civil Practice Act by the State Bank of Kenmore for an order granting a review of the determination of the Banking Board of the State of New York which approved the application of the Marine Trust Company of Buffalo to open and occupy a branch office in the town of Tonawanda, New York, for a review of the investigation and approval of the Superintendent of Banks pursuant to which such application was submitted to the Banking Board in accordance with the provisions of section 29 of the Banking Law and for an order annulling the certificate issued by said superintendent authorizing such opening and occupancy or in the alternative that this proceeding be referred to another court or referee for the trial of the issues.

The petitioner is a banking corporation organized under the laws of this State and has its principal place of business located in the village of Kenmore, in the town of Tonawanda.

It appears that on or about September 25, 1947, the Marine Trust Company of Buffalo made application to the Superintendent of Banks to open and occupy a branch office in the town of Tonawanda not within the confines of a city or an incorporated village. Such application was thereafter approved and on or about September 29, 1948, submitted by him to the Banking Board at its meeting held on that date which also gave its approval by the unanimous vote of three fifths of all its members who were present at such meeting. Thereafter the certificate of authority to open such branch office was issued by the superintendent.

The petitioner claims that the Banking Board's action was illegal and erroneous in the following respects: (a) in granting the application of the Marine Trust Company of Buffalo, New York; (b) in granting an application for the opening of a branch bank outside of a city or village, in violation of section 105 of the Banking Law; (c) in granting an application for the opening of a branch bank in an area where the public convenience and advantage will not be promoted, in violation of section 29 of the Banking Law; (d) in granting an application for the opening of a branch bank in an area outside the area in which the applicant bank is authorized by its charter to conduct its business; (e) in granting an application for the opening of a branch bank in a location where an operating loss will naturally result to the applicant in the operation of such branch bank;

(f) in granting an application for the opening of a branch bank in the area served by petitioner, where the maintenance of such branch bank may result in the creation of unsound and unnecessary competition in the banking business in the community that would be detrimental to petitioner's business. It contends also that the superintendent erred in submitting the application to the Banking Board: (a) in approving the application of the Marine Trust Company of Buffalo and submitting the application to the Banking Board; (b) in making and issuing the certificate dated September 29, 1948; (c) in certifying to the Banking Board that the public convenience and advantage will be promoted by the opening of the said branch office; (d) in submitting the said application to the Banking Board, pursuant to section 29 of the Banking Law, where the proposed branch bank is not within a city or a village; (e) in submitting the said application to the Banking Board, pursuant to section 29 of the Banking Law, where the proposed branch bank is to be located in an area outside the area in which the applicant bank is authorized by its charter to conduct its business; (f) in submitting the said application to the Banking Board, pursuant to section 29 of the Banking Law, where the proposed branch bank will show an operating loss as a result of the operation of such branch bank; (g) in submitting the said application to the Banking Board, pursuant to section 29 of the Banking Law, where the maintenance of such branch bank may result in the creation of unsound and unnecessary competition in the banking business in the community, that would be detrimental to petitioner's business.

These specifications indicate that the basic contentions of the petitioner which it claims justify the relief which is sought are in reality threefold, namely: that the superintendent and board have violated by their determinations the provisions of section 105 of the Banking Law by permitting the opening of a branch bank at the proposed site which is outside the limits of a city or an incorporated village; that the charter of the Marine Trust Company of Buffalo, New York, did not authorize it to transact business outside the area therein prescribed which was the city of Buffalo and that public convenience and advantage were not promoted by the grant as required by section 29 of the Banking Law.

Section 105 of the Banking Law in effect at the time of the approval of the application insofar as it is material here provided as follows:

" *Branch offices; prohibition against doing business at unauthorized places.* 1. No bank or trust company or officer, director, agent or employee thereof, shall transact any part of its usual business of banking at any place other than its principal office, except as follows: * * *

" (b) A bank or trust company may open and occupy a branch office or branch offices in any city or village located in the banking district in which is located its principal office, provided in no event shall a branch be opened and occupied pursuant to this paragraph (b) in a city or village in which are already located one or more banks, trust companies or national banking associations, except for the purpose of acquiring by merger, sale or otherwise the business and property of one or more of such banks, trust companies or national banking associations, whether in liquidation or doing business in the usual course.

" 2. Hereafter before any branch or branches shall be opened and occupied pursuant to paragraphs (a) and (b) of subdivision one of this section:

" (a) The superintendent shall have given his written approval as provided in article two of this chapter and the banking board shall have given its approval by a three-fifths vote of all its members.

" (b) The actual paid in capital stock of such bank or trust company shall exceed for each branch the amount required by section ninety of this article by an amount equal to the minimum capital stock required for a bank located in the city or village in which such branch is to be located; provided that a bank may continue to operate one branch opened prior to April twenty-seventh, nineteen hundred eight and thereafter maintained, for each fifty thousand dollars by which its capital stock exceeds the amount required by section ninety of this article. * * *

" 4. The term 'village ' as used in this section shall mean either an incorporated or *an unincorporated village.*" (Emphasis supplied.)

Thereby, subject to the limitations imposed by the section, the Legislature has provided for the opening of branch offices by banks and trust companies in certain cities or villages of the State.

The petitioner asserts that it was not the intention of the Legislature to include within the provisions of the section any area which had not been incorporated as one of the statutory municipalities therein named. Such a construction would defy the plain words of the statute. By explicit language in a separate

subdivision the term " village " is defined and is stated to mean either an incorporated or unincorporated village. That is the only purpose served by subdivision 4 of the section. When the statute was enacted, the Legislature was aware that an unincorporated village was not a municipal corporate entity with its own governmental structure. Either it must be said that a meaningless subdivision was enacted since there could be no necessity to define an incorporated village or that there was a legislative intent to denote some area other than that embraced within an incorporated village within which a branch bank could be established in a proper case. To adopt the petitioner's view would be to deny banking facilities to residents of the State who live in populated but unincorporated areas wherein every other facility for modern living exists on the basis that the areas involved although eligible to do so had not been formally incorporated. The Legislature did not intend such and has expressly said so. Any other construction of the statute would defeat its purpose and deny effect to all of the language used. (*Kuhn* v. *Knight*, 190 N. Y. 339; *People* v. *Luhrs*, 195 N. Y. 377; *Mayor of City of N. Y.* v. *Manhattan Ry. Co.*, 143 N. Y. 1.) The standards applied by the Superintendent of Banks in this instance as to population and area to determine the eligibility of the community as a location for a branch office were at least the equivalent of the minimum requirements for incorporation as an incorporated village. (Village Law, § 2.) Moreover since 1934, branch banks to the number of fourteen indicated in the answer and return of the respondents Bell and the Banking Board have been authorized in unincorporated villages. If there were ambiguity such practical construction of the statute by those charged with the duty of its application and enforcement over such an extended period of time could not be ignored. (*Matter of City of New York*, 217 N. Y. 1; *Grimmer* v. *Tenement House Dept. of City of N. Y.*, 205 N. Y. 549; *Matter of Broderick* v. *City of New York*, 295 N. Y. 363, 380.)

In 1919, when the Marine Trust Company of Buffalo was organized, the statute provided that the certificate of organization of a trust company should specifically state " the place where its business is to be transacted." (L. 1914, ch. 369, § 180.) Its certificate in compliance therewith stated that its business was to be transacted in the city of Buffalo. The statute remained unchanged until 1937 when it was amended by the Legislature to specify in lieu of that provision the statement of " the place where its principal office is to be located." (L.

1937, ch. 619; Banking Law, § 90.) In 1934 the opening of branch offices by trust companies was permitted outside the cities of their principal offices under certain circumstances. (L. 1934, ch. 666; Banking Law, § 195.) Section 105 of the Banking Law, enacted in 1937 (L. 1937, ch. 619), consolidated the subject matter of former sections 110 and 195 of the Banking Law which had dealt with banks and trust companies separately.

The contention of the petitioner is that to obtain the legislative grant of additional powers to exercise trust company functions by the opening of a branch office pursuant to the provisions of section 105 of the Banking Law, the certificate of organization of the Marine Trust Company of Buffalo must have been amended prior to its application in compliance with the provisions applying to certificates filed after the amendment of 1937.

The legislative intent evidenced by the enactments of 1934 and 1937 was, among other things, to liberalize and to extend branch banking in respect of the places where it might be conducted. Their purpose was to grant to banks and trust companies organized and existing pursuant to the provisions of the Banking Law of this State, whose certificates had complied with the provisions of the statute as they had existed at the time of their incorporation, permission, subject to the approval of the Superintendent of Banks and the Banking Board and to the limitations otherwise imposed by the section, to open branch offices outside the places where, if incorporated after 1937, their certificates of organization stated their principal offices were to be located or where, if incorporated prior to 1937, their business was to be transacted. There is no provision of the statute which expressly or by implication makes the amendment of such certificates a condition precedent to the granting or the receiving of such permission. The effect of the statute was to bestow upon those existing corporations in addition to the powers granted by their certificates, those conferred by the statute itself and it must be necessarily inferred that the intent of the Legislature was to enlarge and to expand the certificates of organization of existing banking corporations to include and embrace such powers.

It appears that the Superintendents of Banks with the approval of the Banking Board since 1934 in numerous instances have authorized the opening of branches by banks whose certificates of organization contained a recital similar to that of the certificate of organization of the Marine Trust Company of

Buffalo. Effect to such practical construction should be given. (*Matter of City of New York,* 217 N. Y. 1, *supra; Grimmer* v. *Tenement House Dept. of City of N. Y.,* 205 N. Y. 549, *supra.*)

On January 27, 1949, after the application of the Marine Trust Company of Buffalo had been approved, its certificate was amended to comply with the present statute. Although I am impelled to conclude for the above reasons that such was not required, I think that the amendment has now made the objection of the petitioner academic.

The determination of the question as to whether public convenience and advantage will be promoted by the grant which has been made has been confided by the Legislature to the sound discretion of the superintendent and the Banking Board, (Banking Law, § 12, subds. 3, § 29.) The courts may not control that discretion nor do they have the power to substitute their judgment for that of those administrative officials. Only where it clearly appears they have exceeded their statutory authority or where their actions have been " erroneous, arbitrary, capricious, discriminatory or palpably illegal " will the court interfere. There is no such showing here. The claim that a different decision should have been made is insufficient to invoke judicial power of review. (*Matter of Lunghino & Sons,* 176 App. Div. 285; *Matter of Erlanger* v. *Regents of Univ. of State of N. Y.,* 256 App. Div. 444; *Matter of Miller* v. *Kling,* 291 N. Y. 65; *Matter of Marburg* v. *Cole,* 286 N. Y. 202; *Matter of Firshein* v. *Reavy,* 263 App. Div. 490, affd. 289 N. Y. 712; *Matter of Humphrey* v. *State Ins. Fund,* 298 N. Y. 327; *Noyes* v. *Erie & Wyoming Farmers Co-op. Corp.,* 281 N. Y. 187.)

Since I have determined that the petitioner's contentions are without merit and that no triable issue of fact is presented, the petition must be dismissed on the merits, without costs.

Submit order accordingly.

I am sending the papers which were submitted upon the application to the Attorney-General.